IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOY TRAVIS, | : |
| Plaintiff, | : |
| vs. | : CIVIL ACTION NO. _____ |
| THE VANGUARD GROUP, INC., and VANGUARD MARKETING CORPORATION, | : JURY TRIAL DEMANDED |
| Defendants. | : |

## COMPLAINT

Plaintiff, Joy Travis, brings this action for damages against The Vanguard Group, Inc. and Vanguard Marketing Corporation (together, "Vanguard") alleging as follows:

## PARTIES

1. Plaintiff Joy Travis ("Travis") resides at 1513 West Woodbank Way, West Chester, Pennsylvania 19380. At all relevant times, Travis maintained an investment account with Vanguard. Until her recent marriage, Travis was known by her prior married name, Joy Delaney.

2. Defendant The Vanguard Group, Inc. ("The Vanguard Group") is a Pennsylvania corporation with a business address at 100 Vanguard Boulevard, Malvern, Pennsylvania 19355. The Vanguard Group is one of the world's largest investment management companies and reportedly has more than 140 domestic funds and an additional 40 funds in international markets.

3. Defendant Vanguard Marketing Corporation ("Vanguard Marketing") is a Pennsylvania corporation with a business address at 100 Vanguard Boulevard, Malvern, Pennsylvania 19355. Vanguard Marketing is a subsidiary of The Vanguard Group. Vanguard Brokerage Services is a division of Vanguard Marketing and is the introducing firm for all Vanguard Brokerage Service accounts.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the first and second claims pursuant to Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa and 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the third through seventh claims alleged herein pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), as a substantial portion of the events giving rise to the claims occurred in this district. Venue is also proper in this district as both defendants are headquartered in this district.

## FACTUAL ALLEGATIONS

### Travis Places Her Trust In Vanguard

6. Travis, who is 37 years old, is unsophisticated in financial matters in general, and in the securities industry in particular. She has no experience or knowledge with respect to investments.

7. At all relevant times, Travis's family finances were handled by her then-husband John Delaney ("Delaney"). Delaney opened all account statements and related correspondence, paid the family's bills and took care of the paperwork associated with their bills and accounts.

2

8.      Delaney has worked as a registered representative at a number of financial firms, including at Vanguard during 2004 and 2005.

9.      In October 2003, Travis opened an account with Vanguard. The account was an individual account that was in her prior married name, Joy D. Delaney. At the recommendation of Delaney, Travis instructed Vanguard to invest her initial deposit of $600,000 as follows:

| **Fund Number** | **Fund Name** | **Investment Amount** |
|---|---|---|
| 0063 | PA Tax-Exempt Money Market | $ 25,000 |
| 0036 | GNMA | $ 75,000 |
| 0044 | High Yield Tax-Exempt | $ 25,000 |
| 0084 | Total Bond Market Index | $100,000 |
| 0723 | Life Strategy Income | $ 25,000 |
| 0040 | 500 Index | $150,000 |
| 0052 | Health Care | $ 25,000 |
| 0072 | Pacific Stock Index | $ 25,000 |
| 0123 | REIT Index | $ 50,000 |
| 0860 | Small-Cap Value Stock Index | $ 50,000 |
| 0113 | Total International Stock Index | $ 50,000 |
|  |  | $600,000 |

Delaney had assured Travis that this portfolio would satisfy her investment objectives of providing income for the family while preserving the funds invested.

10.     The $600,000 that Travis placed for investment with Vanguard represented the bulk of her assets.

11.     Travis relied upon the reputation of Vanguard in assuming that her assets would be properly monitored and invested. Unfortunately, as she later discovered, Vanguard betrayed this trust.

**Defendants Permit Their Agents To Engage In Unauthorized And Unsuitable Trading**

12.     Unbeknownst to Travis, in January 2004, defendants, through their agents or employees, made the first of hundreds of unauthorized and unsuitable trades in Travis's account. Without Travis's knowledge or consent, defendants permitted their agents or employees to

3

redeem shares from Travis's mutual funds to purchase and sell high-risk options. This strategy of day-trading options was not authorized by Travis and certainly was not suited to her conservative investment objectives.

13. Defendants permitted the unauthorized day-trading of options in Travis's account throughout 2004 and 2005. During this time, Travis's portfolio of mutual funds was liquidated without her knowledge or consent and replaced by a series of hundreds of unauthorized and unsuitable option trades.

14. Travis believes that Delaney was involved in the unauthorized and unsuitable trading in her account.

15. In total, defendants permitted their agents or employees to make **over 450** transactions in Travis's account without her authorization, knowledge or consent.

16. Attached as Exhibit A is a schedule of all the unauthorized and unsuitable transactions in Travis's account at Vanguard.

17. The conversion of Travis's balanced portfolio of mutual funds to the speculative trading of stock and options should have raised multiple red flags at Vanguard. Defendants, however, failed to take any steps to prevent the unauthorized and unsuitable trading in Travis's account. Indeed, defendants took no action to determine if the extensive trading in Travis's account during 2004 and 2005 was authorized or suitable.

18. Defendants knew or should have known that the trading in Travis's account was unauthorized and unsuitable. Defendants, however, either lacked a functioning system of controls to prevent their agents or employees from engaging in this unauthorized and unsuitable trading or simply ignored the fact that they were conducting hundreds of such trades in her account.

19. Since Delaney handled the family's finances, Travis did not open account statements sent to her by Vanguard. In December 2005, Travis, who was concerned about her relationship with Delaney, opened her Vanguard account statement. Travis was shocked to find that her total account balance had fallen from $600,000 to less than $2,000. Only after further investigation did Travis discover the true breadth and scope of the unauthorized and unsuitable trading in her account.

### FIRST CLAIM FOR RELIEF – UNAUTHORIZED TRADING IN VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT

20. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

21. The unauthorized trades in Travis's account constitute a violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

22. Defendants carried out a plan, scheme or course of conduct that was intended to and did deceive Travis.

23. Defendants (a) employed devices, schemes and artifices to defraud; (b) failed to disclose material facts about Travis's account; and (c) engaged in acts, practices and a course of conduct that operated as a fraud and deceit upon Travis.

24. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal or not disclose the unauthorized trades.

25. Travis's account was a non-discretionary account. At no time did Travis provide authorization for defendants or their agents or employees to exercise discretion or dominion over her investments. All of the option and stock trading in her account was conducted without Travis's authority, knowledge or consent.

26.     Defendants and their agents and employees failed to disclose the unauthorized trading to Travis.

27.     Defendants knew, or acted with reckless disregard for the truth, that the unauthorized trades were made without Travis's authority, knowledge or consent. Nonetheless, defendants took advantage of Travis's lack of investment knowledge and permitted their agents or employees to make hundreds of unauthorized trades in Travis's account throughout 2004 and 2005.

28.     Travis, an inexperienced investor, relied upon defendants to provide her with truthful information and full disclosure about activity in her investment account.

29.     Travis sustained damages as a direct result of the unauthorized trades in her account.

## SECOND CLAIM FOR RELIEF – UNSUITABLE TRADING
## IN VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT

30.     Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

31.     Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by permitting the purchase and sale of high-risk options and stock in Travis's account that were not suited to her investment needs.

32.     Defendants carried out a plan, scheme or course of conduct that was intended to and did deceive Travis.

33.     Defendants (a) employed devices, schemes and artifices to defraud; (b) failed to disclose material facts about Travis's account; and (c) engaged in acts, practices and a course of conduct that operated as a fraud and deceit upon Travis.

34. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct that operated as a fraud and deceit upon Travis.

35. Travis's account was a non-discretionary account. At no time did she provide authorization for defendants or their agents or employees to exercise control or dominion over her investments. All of the option and stock trading in her account was conducted without Travis's authority, knowledge or consent. By permitting these unauthorized trades, defendants exercised *de facto* control over Travis's investments.

36. Defendants, through their agents or employees, purchased and sold hundreds of high-risk options in Travis's account. These transactions converted Travis's balanced portfolio into a highly speculative and risky portfolio that consisted of unsuitable investments for Travis. At no time did Travis express a desire to engage in the risky strategy of the frequent day-trading of high-risk options.

37. Defendants knew, or acted with reckless disregard for the truth, that the unauthorized trades were unsuitable for Travis. Defendants also knew, or acted with reckless disregard for the truth, that (a) Travis had no experience in trading stocks and options; (b) did not authorize the transactions in her account; (c) the assets in her Vanguard account represented the bulk of her total assets; (d) Travis wanted to maintain a balanced portfolio; and (e) the pattern of frequent trading of high-risk options was not in character with a novice investor with no trading experience or knowledge. Nonetheless, defendants, through their agents or employees, purchased and sold high-risk options in Travis's account, taking advantage of her lack of investment knowledge and experience.

38. These transactions subjected Travis to excessive and unauthorized exposure and risk.

39. Defendants failed to disclose the risks associated with trading high-risk options. Defendants also failed to inform Travis that the frequent purchase and sale of options was not suited to her investment needs.

40. Travis, an inexperienced investor, relied upon defendants to provide her with truthful information and full disclosure about her account.

41. Travis sustained damages as a direct result of the unauthorized trades in her account.

## THIRD CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTY

42. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

43. Defendants induced Travis to place her trust and confidence in them in matters pertaining to her investments.

44. As a result, defendants stood as fiduciaries to Travis in matters pertaining to her investments and owed her a duty to act in good faith, with reasonable care, skill and diligence, and to advise her of all relevant facts relating to her investments.

45. Defendants breached their fiduciary duty to Travis by permitting their agents or employees to execute hundreds of unauthorized trades in her account.

46. Defendants breached their fiduciary duty to Travis by failing to keep her informed of all relevant facts relating to her investments.

47. Defendants further breached their fiduciary duty to Travis by permitting their agents or employees to purchase and sell high-risk options that were unsuitable considering her investment experience and needs.

48. Travis sustained damages as a direct result of the breaches by defendants of their fiduciary duties.

### FOURTH CLAIM FOR RELIEF – COMMON LAW FRAUD

49. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

50. Defendants permitted their agents or employees to make hundreds of unauthorized and unsuitable trades in Travis's account. Defendants failed to inform Travis of the unauthorized and unsuitable trading in her account. This conduct is deceptive and fraudulent.

51. Defendants knew, or were reckless in not knowing, that Travis had no prior investment experience, had never personally traded options or stocks, and did not wish to engage in the highly risky strategy of day-trading of options. Nonetheless, defendants permitted their agents or employees to engage in frequent and unauthorized trading of high-risk options in Travis's account without disclosing these trades to Travis or determining whether she authorized this trading.

52. Travis, an inexperienced investor, relied upon defendants to provide her with truthful information and full disclosure about her account.

53. Travis sustained damages as a direct result of defendants' fraudulent and deceptive conduct.

## FIFTH CLAIM FOR RELIEF – NEGLIGENCE

54. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

55. Defendants owed Travis a duty of care with respect to her investments. In particular, defendants owed Travis a duty of care to ensure that no trades would be conducted in her account without her authorization, knowledge or consent. In addition, defendants owed Travis a duty of care to ensure that her investments were suited to her investment needs.

56. By engaging in the conduct described herein, defendants breached that duty of care.

57. Travis sustained damages as a proximate cause defendants' breaches of their duty of care.

## SIXTH CLAIM FOR RELIEF – NEGLIGENT SUPERVISION

58. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

59. Defendants owed Travis a duty of care to properly supervise the actions of their agents and employees.

60. By allowing their agents and employees to engage in the conduct described herein, defendants breached their duty to supervise their agents and employees. In particular, defendants failed to supervise their agents and employees who were permitted to make hundreds of unsuitable transactions in Travis's account without her authority, knowledge or consent.

61. Defendants further breached their duty by failing to implement reasonable safeguards or establish and enforce rules necessary for the protection of their customers' investment accounts.

62. Defendants were reckless in their supervision of their agents and employees and Travis's account.

63. Defendants' agents and employees were working during the course of and within the scope of their employment when they engaged in the unauthorized and unsuitable trading in Travis's account.

64. Travis reasonably relied on defendants to properly supervise their agents and employees.

65. Travis sustained damages as a direct and proximate cause of defendants' breach of their duty of care.

## SEVENTH CLAIM FOR RELIEF – CONVERSION

66. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

67. Defendants permitted hundreds of unauthorized trades to be made in Travis's account. Each of the unauthorized trades was made without obtaining the requisite authority from Travis. The unauthorized trades were all transacted without Travis's knowledge and consent.

68. Defendants and their agents or employees exercised unauthorized dominion and control over Travis's account when they effected the unauthorized trades.

69. Defendants wrongfully interfered with Travis's ownership rights in her investments when they permitted the unauthorized trades in her account.

70. Defendants' conduct of converting Travis's investments has caused Travis to sustain damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment against defendants and in her favor in an amount to be determined by the Court, plus interest and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury as to all claims in this action.

**BARRACK, RODOS & BACINE**

By: _____
Daniel E. Bacine
Jeffrey B. Gittleman
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Phone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for Plaintiff*

Dated: August 22, 2007