IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOY TRAVIS,           :
                  :
        Plaintiff,   :
                  :
        v.         :     CIVIL ACTION NO. 2:07-cv-03484-BWK
                  :
THE VANGUARD GROUP, INC., and   :
VANGUARD MARKETING       :
CORPORATION,           :
                  :
        Defendants.   :

**O R D E R**

**AND NOW**, this _____ day of _____, 2007, upon consideration of Defendants The

Vanguard Group, Inc., and Vanguard Marketing Corporation's Motion to Dismiss and any

Response thereto, it is hereby **ORDERED** that Defendants' Motion to Dismiss for Failure to

State a Claim upon which relief can be granted under Fed. R. Civ. P. 12 (b)(6) is **GRANTED**

and that all counts of the Complaint are **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____

Hon. Bruce W. Kauffman

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TRAVIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 2:07-cv-03484-BWK |
| | : | |
| THE VANGUARD GROUP, INC., and | : | |
| VANGUARD MARKETING | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS THE VANGUARD GROUP, INC., and VANGUARD MARKETING CORPORATION'S MOTION TO DISMISS

Defendants The Vanguard Group, Inc., and Vanguard Marketing Corporation respectfully

move to dismiss this action with prejudice pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal

Rules of Civil Procedure for the reasons more fully set forth in the accompanying Memorandum

of Law, which is incorporated herein by reference.

Respectfully submitted,

"/s/" Paula D. Shaffner
Paula D. Shaffner
Attorney I.D. No. 43542
Attorney for Defendants
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102-2186
(215) 972-8695

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TRAVIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 2:07-cv-03484-BWK |
| | : | |
| THE VANGUARD GROUP, INC., and | : | |
| VANGUARD MARKETING | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS THE VANGUARD GROUP, INC., and VANGUARD MARKETING CORPORATION'S MOTION TO DISMISS

### I.    PRELIMINARY STATEMENT

Defendants The Vanguard Group, Inc. and Vanguard Marketing Corporation (collectively, "Vanguard" or "Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint.  Plaintiff Joy Travis asserts a variety of legal claims allegedly stemming from her investments made through Defendants.  These claims are hopelessly dated and filed well outside any applicable statute of limitations.  Plaintiff alleges that she invested in a variety of mutual funds to provide income with no risk to principal.  Within months of her investment, redemptions of the mutual funds began and option contracts were purchased and sold.  Vanguard dutifully and explicitly conveyed this information to Plaintiff in unmistakable terms each and every month in her monthly account statements.  Well over two years before this action was filed (the applicable statute of limitations period), Plaintiff's accounts had declined from $600,000 to under $10,000.  Plaintiff turned a blind eye to her

investments – allegedly ceding control to her husband – and chose to ignore her monthly account statements until December 2005, when her marriage began to fail.  Such obvious neglect of her obligations ***does not*** toll the running of the statute of limitations.  The Complaint is time barred by a rather significant amount of time.  Further, Plaintiff made no effort to properly plead a claim for fraud, and these claims can be dismissed on that basis as well.

## II.   <u>OVERVIEW OF ALLEGATIONS</u>

Plaintiff alleges that, in October 2003, she opened an account with Vanguard under her married name, Joy Delaney, and invested $600,000 in various mutual funds.  Complaint ¶ 9.  Plaintiff claims to have made these investments at the recommendation of her then-husband, John Delaney.  <u>Id.</u>  Plaintiff's husband allegedly "assured [her] that this portfolio would satisfy her investment objectives of providing income for the family while preserving the funds invested."  <u>Id.</u>  Plaintiff does not allege that she ever spoke to anyone at Vanguard before investing.  Nor does she allege that she ever communicated her alleged "investment objectives" to Vanguard.

Plaintiff further alleges that she allowed her husband – who "worked as a registered representative at a number of financial firms" – to handle the "family finances."  Compl. ¶¶ 7-8.  In particular, Plaintiff alleges that she allowed her husband to "open[] all account statements and related correspondence, [pay] the family's bills and [take] care of the paperwork associated with their bills and accounts."  <u>Id.</u>

In a series of conclusory allegations, Plaintiff claims that Vanguard permitted unidentified "agents or employees" to make "unauthorized and unsuitable trades" in her accounts in 2004 and 2005.  Compl. ¶¶ 12-18.  She alleges that her "portfolio of mutual funds was liquidated without her knowledge or consent and replaced by a series of hundreds of

unauthorized and unsuitable option trades."  Id. ¶ 13.  Plaintiff alleges that these options trades were "high risk" and "not suited to her conservative investment objectives."  Id. ¶ 12.  The trades began in January 2004 – over 3 ½ years before Plaintiff filed this action.  Id. ¶ 12.

Plaintiff alleges in vague fashion that her husband "Delaney was involved in the unauthorized and unsuitable trading in her account."  Compl. ¶ 14.  She further alleges that her husband worked at Vanguard in 2004 and 2005.  Id. ¶ 8.  Plaintiff, however, never specifically alleges that her husband placed the trades, much less that he did so while acting as an employee or agent of Vanguard (rather than, for example, as the designated head of the family's finances).  Other than implicating her husband (whom she has not sued in this action), Plaintiff fails to allege any facts regarding who placed the trades, how or why that person did so, or what motive Vanguard had to place trades without proper instructions.[1]

A critical fact that Plaintiff does acknowledge in her Complaint, however, is that Vanguard sent her "account statements."  Compl. ¶ 19.[2]  Specifically, Vanguard sent monthly account statements to Plaintiff at 1513 West Woodbank Way, West Chester, PA 19380 – the same address that Plaintiff identifies in the Complaint as her residence.  See Id. ¶ 1.  Beginning with her January 31, 2004 year-to-date statement, Plaintiff's monthly account statements for 2004 and 2005 disclosed all of the mutual fund redemptions and brokerage trades that Plaintiff

---

[1]     For example, Plaintiff alleges no explanation for why Vanguard Marketing Corporation – a discount broker that offers only client-directed brokerage accounts – would open a brokerage account in her name without being asked and then assume discretionary trading authority over that account.  Nor does Plaintiff allege any possible motive that The Vanguard Group (the transfer agent and an investment advisor for Vanguard mutual funds) had to liquidate Plaintiff's *Vanguard* mutual fund accounts without her consent.

[2]     Plaintiff's monthly account statements for the period December 31, 2003 through December 31, 2005 are attached hereto as Exhibit A.  The Court may consider these statements in ruling on this motion to dismiss.  See, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting [a] motion to dismiss into one for summary judgment.").  See also Winer Family Trust v. Queen, 2007 WL 2753734, at *5 (3d. Cir. Sept. 24, 2007) (court may consider documents referred to in the Complaint or on which the Complaint is based).

now belatedly contends she did not authorize.  Moreover, from the first page of each statement alone, Plaintiff could see the following sharp decline in the value of her portfolio on a month-to-month basis:

| **Date** | **Value** |
|---|---|
| January 31, 2004 | $626,007.82 |
| February 29, 2004 | $631,104.01 |
| March 31, 2004 | $557,442.11 |
| April 30, 2004 | $494,166.13 |
| May 31, 2004 | $474,576.82 |
| June 30, 2004 | $432,570.34 |
| July 31, 2004 | $360,536.14 |
| August 31, 2004 | $341,618.48 |
| September 30, 2004 | $274,681.38 |
| October 31, 2004 | $270,221.50 |
| November 30, 2004 | $261,479.95 |
| December 31, 2004 | $166,644.72 |
| January 31, 2005 | $ 77,181.76 |
| February 28, 2005 | $ 40,178.50 |
| March 31, 2005 | $ 35,770.45 |
| April 30, 2005 | $ 36,589.37 |
| May 31, 2005 | $ 16,590.83 |
| June 30, 2005 | $ 29,355.59 |
| July 31, 2005 | $ 6,979.89 |

Despite receiving monthly account statements from Vanguard, Plaintiff waited over 3½ years after the alleged unauthorized trading began to file this lawsuit.  She asserts claims against Defendants for (1) Unauthorized Trading in Violation of Section 10(b) of the Securities Exchange Act, (2) Unsuitable Trading in Violation of Section 10(b) of the Securities Exchange Act, (3) Breach of Fiduciary Duty, (4) Common Law Fraud, (5) Negligence, (6) Negligent Supervision, and (7) Conversion.

Plaintiff seeks to excuse the late filing of her claims by alleging that she "did not open the account statements sent to her by Vanguard" because "Delaney handled the family's finances."  Compl. ¶ 19.  As discussed below, Plaintiff's wholesale abdication of any responsibility for following the performance of and transactions in her accounts does not absolve her of her legal responsibility to do so.  This action, filed well over two years after the alleged unauthorized and unsuitable redemption of mutual fund shares and purchase of options, is untimely and should be dismissed.

### III.   ARGUMENT

#### A.   LEGAL STANDARD FOR GRANTING MOTION TO DISMISS.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a Complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The facts of the Complaint should be viewed in a light most favorable to the Plaintiff.  See Tunnel v. Wiley, 514 F.2d 971, 975 n.6 (3d Cir. 1975).  Those facts must be accepted as true.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  However, the court need not accept "a complaint's bald assertions or legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), or unsubstantiated conclusions or factual inferences that are

unwarranted.  Saxton v. Cent. Pa. Teamsters Pension Fund, No. Civ. A. 02-CV-986 2003 WL 22952101, at *3 (E.D. Pa. Dec. 9, 2003).

The expiration of a statute of limitation is an appropriate inquiry in a motion to dismiss.  See, e.g.,  Benak v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 n.14 (3d Cir. 2006) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief  . . . provides a basis for a motion to dismiss under Rule 12(b)(6).").  Indeed, the Court of Appeals for the Third Circuit has repeatedly upheld the dismissal of time-barred securities fraud claims under Rule 12(b)(6).  See, e.g., In re Exxon Mobil Corp. Sec. Litig., No. 05-4571 2007 U.S. App. LEXIS 20460, at *36 (3d Cir. Aug. 27, 2007) (affirming 12(b)(6) dismissal of untimely securities fraud claims); DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 210 (3d Cir. 2007) (same); Benak, 435 F.3d at 397 (same); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1318 (3d Cir. 2002) (same); see also In re American Business Fin. Services, Inc. Sec. Litig., No. 05-232, 2007 WL 81937, at *6-7 (E.D. Pa. Jan. 9, 2007) (granting motion to dismiss untimely Securities Act claims).

## B.     PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

All of Plaintiff's claims are governed by a two-year statute of limitations.  Each is barred by Plaintiff's failure to file this action within two years. The two-year statute of limitations began to run on Plaintiff's claims no later than when she discovered or in the exercise of reasonable diligence should have discovered the basis for her claims.  Beginning with her statement dated January 31, 2004, Plaintiff received monthly account statements from Vanguard disclosing all of the mutual fund redemptions and brokerage trades that she belatedly contends – over 3½ years later – were unauthorized and unsuitable.  Had Plaintiff in the exercise of

reasonable diligence looked at her statements, she would have discovered the basis for her claims

well before August 22, 2005 – two years before she filed this action.  By that date, Plaintiff had

received 19 monthly statements from Vanguard reflecting a drop in the value of her accounts

from $626,007.82 as of January 31, 2004 to just $6,979.89 as of July 31, 2005.  Because

Plaintiff's claims are time-barred, the Court should dismiss the entire Complaint with prejudice.

> 1.   **Plaintiff's Section 10(b) Claims Are Barred by the Two-Year Statute of Limitations Because Plaintiff Had Notice of the Alleged Fraudulent Activity Starting With the Statement Dated January 31, 2004.**

Plaintiff was required to bring her claims under Section 10(b) of the Securities

Exchange Act by the *earlier* of (1) two years after the discovery of the facts constituting the

alleged violation or, (2) five years after such violation allegedly occurred.  28 U.S.C. § 1658(b).

The Third Circuit applies an inquiry notice standard to determine when the statute of limitations

begins to run in securities fraud actions.  See NAHC, 306 F.3d at 1318 (adopting inquiry notice

standard for securities fraud actions).  As the Court of Appeals for the Third Circuit has

explained:

> Under the inquiry notice standard, the [statute of limitations] period begins to run when the plaintiffs discovered **or in the exercise of reasonable diligence should have discovered** the basis for their claim against the defendant. Whether the plaintiffs, in the exercise of reasonable diligence, should have known of the basis for their claims depends on whether they had **sufficient information of possible wrongdoing to place them on inquiry notice** or to excite storm warnings of culpable activity.  The test for storm warnings is an objective one, based on whether a reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning.

Id. at 1325-26. (citations and quotations omitted) (emphasis added).  "Plaintiffs cannot avoid the

time bar simply by claiming they lacked knowledge of the details or narrow aspects of the

alleged fraud.  Rather, the clock starts when they should have discovered the general fraudulent scheme."  <u>DeBenedictis</u>, 492 F.3d at 216.  "Once on inquiry notice, plaintiffs have a duty to exercise reasonable diligence to uncover the basis for their claims. . . ."  <u>NAHC</u>, 306 F.3d at 1326.  Plaintiffs who "chose not to investigate" when "storm warnings existed" will be "deem[ed] . . . on inquiry notice of their claims."  <u>Benak</u>, 435 F.3d at 401 ("If [plaintiffs] have not shown such diligence, the knowledge they would have acquired through investigation is imputed to them.").

In applying the inquiry notice standard, the Third Circuit has stated that "**investors are presumed to have read** prospectuses, quarterly reports, and **other information related to their investments**."  <u>DeBenedictis</u>, 492 F.3d at 216 (quoting <u>Mathews v. Kidder, Peabody & Co., Inc.</u>, 260 F.3d 239, 252 (3d. Cir. 2001)) (emphasis added).  Accordingly, for statute of limitations purposes, investors are charged with knowledge of the contents of their account statements, even if they claim not to have read those statements.  <u>See, e.g.</u>, <u>Norniella v. Kidder Peabody & Co. Inc.</u>, 752 F. Supp. 624, 628 (S.D.N.Y. 1990) (holding that "duty of inquiry was triggered" by plaintiffs' receipt of account statements).

Courts have dismissed claims for unauthorized or unsuitable trading as time-barred where, as here, the plaintiff received or had access to account statements detailing the contested trades yet did nothing to investigate her claims.  For example, in <u>Appel v. Kidder, Peabody & Co, Inc.</u>, the court granted the defendant's motion to dismiss a "churning" claim on statute of limitations grounds.  628 F. Supp. 153, 158 (S.D.N.Y. 1986).  The court held that the plaintiffs should "in the exercise of reasonable diligence" have discovered the alleged fraudulent trading in their account based upon the confirmations and monthly account statements that they received.  <u>Id.</u> at 157-58.  The court brushed aside the plaintiffs' argument that they did not read

their confirmations and statements and, therefore, should not be charged with knowledge of their contents.  As the court aptly put it, "[p]laintiffs may not close their eyes and say they do not see what is perfectly obvious."  Id. at 157-158.

Similarly, in Rodriquez Canet v. Morgan Stanley & Co., 419 F. Supp. 2d 90 (D.P.R. 2006), the court held that claims for unsuitable and unauthorized investments were time-barred because "there were sufficient facts available in the monthly statements to alert a reasonable individual to a possible wrongdoing and trigger the corresponding duty to investigate."  Id. at 96.  The alleged unauthorized investment was disclosed when purchased, and the court reasoned that "any reasonable investor would have been prompted to inquire to the nature of its purchase by a mere reading of this item."  Id.  The court also found that the plaintiff should have discovered the basis for her suitability claim.

> According to the complaint, the purpose of the account was for plaintiff to seek a stable source of income, thus the account was to be managed in a conservative manner.  Hence, any reasonable investor in plaintiff's position would have reacted when faced with the steady and significant decline of her investment for a period of close to a year when the account value dipped close to 40% of the initial invested sums.

Id. (quotations and citations omitted).  Responding to the plaintiff's claim that she did not receive any account statements, the court noted that the plaintiff did not allege that she "did not have access to them or opportunity to review them."  Id.  Regardless, the court held that the plaintiff should have taken steps to periodically ascertain the status of her account and, at a minimum, had a duty to inform herself as to how her investments were performing.  Id.  Because the plaintiff "failed to look" at the "storm warnings [that] were there," the court dismissed her claims on statute of limitations grounds.  Id. at 96.

Numerous other courts have reached similar results.  See, e.g., Koke v. Stifel, Nicolaus & Co, Inc., 620 F.2d 1340, 1343-44 (8th Cir. 1980) (affirming dismissal of securities fraud claim and explaining that plaintiff "was not free to ignore" account statements that disclosed allegedly unsuitable investments); Kosovich v. Thomas James Assocs., Inc., No. 93-Civ-5443, 1995 WL 135582, at *3-4 (S.D.N.Y. Mar. 29, 1995) (dismissing securities fraud claim and holding that plaintiff was on inquiry notice of allegedly unsuitable investments from account statements); Salzman v. Prudential Secs. Inc., No. 91 Civ. 4253, 1994 WL 191855 (S.D.N.Y. May 16, 1994) (holding that a substantial drop in value of investment that contradicts investment objectives triggers a duty to inquire); Lenz v. Associated Inns and Restaurants Co. of Amer., 833 F. Supp. 362 (S.D.N.Y. 1993) (holding that investor cannot ignore economic status of investment and avoid the bar of a statute of limitations); Norniella, 752 F. Supp. at 628 (dismissing churning claim and holding that "duty of inquiry was triggered" by plaintiff's receipt of account statements); Goodman v. Shearson Lehman Bros., Inc., 698 F. Supp. 1078, 1082-83 (S.D.N.Y. 1988) (dismissing suitability claim where plaintiff received account statements detailing all trades but failed to examine them); Holtzman v. Proctor, Cook & Co.Inc., 528 F. Supp. 9 (D. Mass. 1981) (holding that investor cannot ignore losses reflected in the monthly account statements and prevent the running of the statute of limitations).

Here, too, Plaintiff's securities fraud claims should be dismissed because they are barred by the two-year statute of limitations.  The simple fact of the matter is that the alleged fraud, which Plaintiff now claims, would have been starkly evident on every single monthly account statement she received.  With respect to the alleged unauthorized option trades, they are set forth in great detail over multiple pages in each and every monthly account statement.  The redemption of mutual funds also was detailed on a monthly basis.  With respect to the suitability

claim, the concept that Plaintiff was invested for income with no risk of loss of principal is directly contradicted by the monthly decline in the account value.  Within the first six months, Plaintiff's accounts had declined in value by almost 30%.  By the end of December 2004, the accounts had dwindled to a total value of $166,644.72.  This information, delivered to Plaintiff well outside the statute of limitations period, vividly demonstrates to any reasonable investor that there is a contradiction between her alleged investment objectives and her account performance. The import of even a cursory review of the account statements is best demonstrated by Plaintiff herself in the Complaint.  Plaintiff alleges that when she finally decided to open a monthly account statement, she was "shocked" to find that her balance had fallen to less than $2,000. Compl. at ¶19.  No doubt this same "shock" would have existed had Plaintiff looked at her July 2005 account statement – received over two years prior to the commencement of this action – which showed a value of $6,979.89 on the very first page.

In short, Plaintiff was on inquiry notice of the basis for her securities fraud claims well before August 22, 2005 – two years before she filed this action.  Accordingly, those claims are time-barred.

> 2. **Plaintiff's Remaining Claims Are Barred by the Two-Year Statute of Limitations Because Pennsylvania's Discovery Rule Does Not Apply.**

Plaintiff's claims for breach of fiduciary duty, common law fraud, negligence, negligent supervision, and conversion are likewise time-barred.  Each of those claims is governed by a two-year statute of limitations.  42 Pa. Cons. Stat. § 5524; see also Nw. Mut. Life Ins. Co. v. Babayan, No. Civ. A. 03-717, Civ. A 03-1622, 2004 WL 1902516, at * 22-25 (E.D. Pa. Aug 25, 2004) (barring a claim for breach of fiduciary duty and negligence based on two-year statute of limitations under 42 Pa. Cons. Stat. § 5524); Elite Sportswear Prods., Inc. v. New York Life Ins. Co., Civ. A. No. 05-CV-5181, 2006 WL 3052703, at *5 (E.D. Pa. Oct. 24, 2006)

(barring a claim for fraud based on two-year statute of limitations under 42 Pa. Cons. Stat. §

5524); McGee v. Proctor & Gamble Distrib. Co., 445 F. Supp. 2d 481, 494  (E.D. Pa. 2006)

(barring a claim for negligent supervision based on two-year statute of limitations under 42 Pa.

Cons. Stat. § 5524); Gannon v. Nat'l R. R. Passenger Corp., No. Civ. A. 03-4501, 2004 WL

1274384, at * 2 (E.D. Pa. June 10, 2004) (stating that claims for conversion in Pennsylvania are

governed by two-year statute of limitation in 42 Pa. Cons. Stat. § 5524(3)).

      "There is a strong policy in Pennsylvania courts favoring the strict application of

statutes of limitations."  Kingston Coal Co. v. Felton Mining Co. Inc., 690 A.2d 284, 288 (Pa.

Super. 1997).  As a general rule, "the statute of limitations begins to run as soon as the right to

institute and maintain suit arises; lack of knowledge, mistake, or misunderstanding do not toll the

running of the statute of limitation."  Id. (quoting Pocono Int'l Raceway v. Pocono Produce Inc.,

468 A.2d 468, 471 (Pa. 1983)).  Here, Plaintiff's ability to institute suit arose and the two-year

statute of limitations began to run by January 2004, when the alleged unauthorized and

unsuitable trading began in her accounts.  Accordingly, the statute of limitations expired on

Plaintiff's state law claims in January 2006 – over 1½ years before Plaintiff filed this action.

      Plaintiff cannot avoid dismissal of her claims by attempting to rely on the

"discovery rule."  The discovery rule is a judicially-created doctrine that provides that the statute

of limitations for tort claims does not begin to run until a party "knows, or reasonably should

know: (1) that he has been injured, and (2) that his injury has been caused by another party's

conduct".  Larthey v. Bland, 532 A.2d 456, 459 (Pa. Super. 1987), allocatur denied, 544 A.2d

1343 (1988).  The discovery rule's application, however, is narrowly circumscribed.  See  Harry

Miller Corp. v. Mancuso Chemicals, Ltd., 469 F. Supp. 2d 303, 313 (E.D. Pa. 2007)

("Pennsylvania courts apply the discovery rule in only the most limited of circumstances.").  The

"salient point giving rise to the discovery rules application is the inability of the injured, **despite the exercise of reasonable diligence**, to know that he is injured and by what cause." Allen v. Stewart Title Guaranty Co., No. 06-CV-2426, 2007 WL 916859, at *3 (E.D. Pa. Mar. 30, 2007) (quoting Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005)) (emphasis added).

Reasonable diligence is "an objective or external [standard] that is the same for all individuals." Kingston Coal, 690 A.2d at 289. The Pennsylvania Supreme Court has explained that "there are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful." Fine, 870 A.2d at 858. Accordingly, "[w]hen information is available, the failure of a plaintiff to make the proper inquiries is failure to exercise reasonable diligence **as a matter of law**." Kingston Coal, 690 A.2d at 289 (emphasis added); see also Allen, 2007 WL 916859 at *3 (granting motion to dismiss time-barred claims and holding that discovery rule did not apply because plaintiff was on constructive notice of title insurance rate schedule published in Title Insurance Act).

Plaintiff bears the burden to both plead and prove that the discovery rule should be applied. As the Pennsylvania Superior Court has held:

> The plaintiff has the burden of justifying any delay beyond the date on which the limitation would have expired if computed from the date on which the acts giving rise to the cause of action allegedly occurred. He must allege and prove facts which show that he made reasonable efforts to protect his interests and which explain why he was unable to discover the operative facts for his cause of action sooner than he did.

Bickell v. Stein, 435 A.2d 610, 612 (Pa. Super. 1981).

Plaintiff does not, and cannot, meet her burden. As discussed above, there is no doubt that Plaintiff would have known of the basis for her alleged claims had she bothered to open the monthly account statements that Vanguard sent directly to her home. Plaintiff's failure

to make *any* inquiries in response to this available information about her accounts constitutes failure to exercise reasonable diligence as a matter of law.  See Kingston Coal, 690 A.2d at 289. Thus, for the same reasons that Plaintiff was on inquiry notice of her securities fraud claims, she likewise should have known of the basis for her state law claims.  Thus, those claims also are time-barred and should be dismissed.

C.   **ALTERNATIVELY, PLAINTIFF'S CLAIMS PURSUANT TO SECTION 10(B) OF THE SECURITIES EXCHANGE ACT FAIL BECAUSE THEY ARE INADEQUATELY PLED.**

To prevail on a Section 10(b) and Rule 10b-5 claim, a plaintiff must plead the following elements:

> (1) a material misrepresentation (or omission); (2) *scienter*, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction causation; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss.

Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005) (internal citations omitted).  In pleading these elements, a plaintiff must comply with the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b).

The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B) (relating to non-class action securities fraud actions).  Further, the PSLRA requires that a plaintiff plead the applicable mental state with particularity.  Id.  To be precise, with respect to each act or omission

alleged to violate [the PSLRA], a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id.

The Supreme Court recently clarified the standards for pleading scienter in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007). The Court held that to survive a motion to dismiss, a plaintiff must plead facts giving rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 2505. This is an "inherently comparative" inquiry. Id. at 2510. As the Court explained:

> The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. . . .[T]he inference of scienter must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

Id. at 2510; see also Winer Family Trust, 2007 U.S. App. LEXIS 22620 at * 12-13. (A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the fact alleged.") (citing Tellabs, 127 S. Ct. at 2510).

In addition to PSLRA requirements, a plaintiff alleging fraud under the Securities Exchange Act must comply with the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b). In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276 (3d Cir. 2006). Rule 9(b), as applied to Section 10(b) claims, requires a plaintiff to plead "(1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of

its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." Id. (quoting In re Rockefeller Ctr. Prop. Inc., Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002)). Rule 9(b) also requires a plaintiff to "identify the source of the allegedly fraudulent misrepresentation or omission." Id. At a minimum, Rule 9(b) requires that plaintiffs "support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where, and how' of the events at issue." Id. at 276-77 (quoting In re Burlington Coat Factory, 114 F.3d at 1434). Finally, to the extent that Rule 9(b) permits general pleading with respect to mental state, the PSLRA supersedes Rule 9(b) as it relates to Rule 10b-5 actions. Id. at 277. Thus, a plaintiff must meet the higher threshold for pleading mental state by alleging "with particularity [the] facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Finally, where a 10b-5 claim is based upon alleged unsuitable or unauthorized trading, additional pleading requirements must be met. A plaintiff alleging an unsuitability claim under Section 10(b) must adequately plead the following five elements:

> (1) the securities purchased were not suited to the buyer's needs;
> (2) the defendant knew or reasonably believed the securities were not suited to the buyer's needs; (3) the defendant recommended or purchased the unsuitable securities for the buyer anyway; (4) the defendant made material misrepresentations with scienter (or, owing a duty to the buyer, failed to disclose material information); and (5) the buyer justifiably relied to his or her detriment on the defendant's fraudulent conduct.

Rowe v. Morgan Stanley Dean Witter, 191 F.R.D. 398, 410 (D. N.J. 1999). It is also necessary to show that the broker had control of an investor's account to establish an unsuitability claim.

See Rivera v. Clark Melvin Sec. Corp., 59 F.Supp. 2d 280, 291 (D. P.R. 1999). Because an

unsuitability claim is a subset of the ordinary Section 10(b) fraud claim, each of these elements must be pled with particularity.  Id.

With respect to the claim for unauthorized trading, a plaintiff must provide specific information regarding the alleged unauthorized trades made in the account (See Rowe, 191 F.R.D. at 413), supported by an accompanying misrepresentation, omission, or nondisclosure, accompanied "by an intent to defraud or a willful and reckless disregard of the client's best interests."  Rowe, 191 F.R.D. 414.  The fact that an unauthorized trade was made is not actionable under Rule 10b(5) absent deception.  Manela v. Gorantia Banking, Ltd., 5 F. Supp. 2d 165 (S.D.N.Y. 1998).

The Complaint fails to meet the 10(b) pleading requirements on many levels. First, Plaintiff has not sufficiently alleged that Defendants made a material misrepresentation or omission.  Instead, the Complaint states in a conclusory fashion, only that Defendants "concealed" and "failed to disclose material facts about Travis's account." Compl. ¶¶ 23-24. Plaintiff fails to allege how Defendants concealed or failed to disclose the supposedly unauthorized and unsuitable trades.  Nor does she allege what information was concealed.  The few facts that Plaintiff does allege directly contradict  her claim.  Plaintiff admits that Defendants sent monthly account statements directly to her home.  Those statements disclosed to Plaintiff the activity occurring in her accounts transaction by transaction.  The Complaint does not suggest that Defendants failed to send account statements at any time or that any statement was altered or omitted relevant information.

Nor does Plaintiff plead with particularity that Defendants made any misrepresentations to her.  She does not allege what statements were allegedly false and misleading, much less who made them, when, and why they were misleading.  Indeed, the

Complaint fails to allege that any specific person working for Defendants ever had any contact with her, much less made misrepresentations.  At most, Plaintiff alleges in vague fashion that her husband was somehow involved in the unauthorized trading in her accounts.  But one is left to guess in what manner he was involved.  Plaintiff does not allege any misrepresentations that he made.  She does not allege that he acted within the scope of his employment in making any alleged unauthorized and unsuitable trades.  Nor does she allege that he ever executed trades in her accounts from Vanguard's premises, using Vanguard property, or for Vanguard's benefit.

Plaintiff also fails to meet the high threshold for pleading scienter.  To successfully plead scienter, the Plaintiff must allege that Defendants possessed the mental state to deceive.  See In re Suprema, 428 F.3d at 276.  A pleading of scienter "may not rest on a bare inference that a defendant must have had knowledge of the facts or must have known of the fraud" because "general imputations of knowledge do not suffice."  Id., at 282.  Once again, the requisite "who, what, when , where, and how" are conspicuously absent.  Plaintiff did not plead that Defendants, or any specific individual employed by Defendants, acted with fraudulent intent.  She does not allege any factual basis, much less a "cogent" and "compelling" one, for inferring that Defendants knew of the alleged unauthorized trades in her admittedly non-discretionary account.  Nor does she allege that Defendants had any motive to commit fraud in her accounts.

The opposing inference one could draw from the facts stated in the Complaint is far more compelling than the inference of scienter as set forth by the Plaintiff.  Simply put, and as admitted by Plaintiff, she relied on her husband to control her finances and she did not read the statements Defendants sent to her.  This does not equate to the required intent attributable to Defendants.  The more compelling inference is that Plaintiff relinquished control of her finances

to her husband, didn't realize investments were performing poorly and continued to lose a substantial amount of money.  There is a compelling inference that when marital difficulties arose, Plaintiff decided to look to someone other than her husband to reclaim some of the money that was lost.  In no way do the allegations pled in the Complaint paint an inference of fraudulent intent that comes close to outweighing this far more reasonable inference.  The Complaint is without any viable statement or inference of deception.

The Complaint also fails for lack of any credible allegation that she justifiably relied on any stated misrepresentation or omission.  Plaintiff vaguely states that she relied on Defendants' reputation that her assets would be "properly monitored and invested." Compl. ¶ 11. This falls woefully short of meeting the 10(b) particularity standard.  By definition, a company's reputation is not a statement made by the company, but "recognition by other people of some characteristic or ability."  Merriam-Webster Online, http://www.merriam-webster.com/dictionary (last visited October 3, 2007). Defendants' reputation is an opinion held by others outside of the company and cannot possibly be a misrepresentation by Defendants. Stating that one relied on a company's reputation and nothing more is not adequate to pass the 10(b) pleading requirements and certainly does fall within the realm of reasonable reliance.

With respect to the lack of suitability claim, the Complaint fails to meet the particularity standard of 10(b) for any of the unsuitability elements.  Indeed, it essentially fails to plead these elements at all.  A blanket allegation that unsuitable trades were made is not sufficient to pass the heightened pleading requirement of 10(b).  Importantly, Plaintiff fails to allege that Defendants had any knowledge of her investment objectives.  She never alleges that she conveyed her investment objectives to either Defendant company.  Absent this knowledge, Plaintiff can not possibly plead properly a claim for lack of suitability.  In order for Defendants

to have intentionally made investments counter to Plaintiff's objectives, Defendants would first have to be aware of those objectives.  Similarly, for Defendants to know or reasonably believe that the alleged unsuitable trades were not suited to Plaintiff's needs, Defendants would have to be made aware of those needs.

Further, Plaintiff specifically states that her account was a non-discretionary account.  Compl. ¶ 25.  Plaintiff failed to allege that she placed any level of faith or control in Defendants or routinely followed Defendants' advice.  Plaintiff does not claim that Defendants took control of her account in any way.  Again, Plaintiff simply states that she relied on Defendants' reputation and that they should have known unsuitable trades were occurring without alleging in any manner whatsoever, let alone with particularity, that Defendants controlled her investments.

Finally, regarding her claim for unauthorized trading, Plaintiff contends very generally that Defendants made "hundreds of unauthorized or unsuitable trades" and that Defendants "permitted their agents or employees to make over 450 transactions" in her account. Compl. ¶¶ 12,15.  The Complaint never identifies a specific person who made unauthorized trades.  The Complaint never connects a specific person to a particular misrepresentation or omission.  Further, the Complaint does not begin to connect a person, a misrepresentation, and facts demonstrating a specific intent to defraud. As previously stated, Plaintiff only contends that she believes that her ex-husband was involved in these allegedly unauthorized transactions, see Compl. ¶ 14, but does not state the basis for this belief, the manner in which he was involved, or how it implicates Defendants.  There is a complete absence of the specific, particularized pleading required to state these claims.

### D. PLAINTIFF HAS NOT STATED, AND CANNOT STATE, A COMMON LAW FRAUD CLAIM AGAINST DEFENDANTS.

Plaintiff's Fourth Claim for Relief is based on an allegation of common law fraud. To state a claim for fraud, plaintiff must plead that: (1) the defendant made a misrepresentation to the plaintiffs; (2) which was fraudulent; (3) of a material fact; (4) on which defendant intended the plaintiffs to rely; (5) the plaintiff did justifiably rely; and (6) this was a substantial factor in bringing about the harm suffered.  See Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).

A plaintiff pleading common law fraud is subject to a heightened pleading standard. Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The Third Circuit has stated that "Rule 9(b) requires plaintiffs to plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).  Allegations of "date, place or time fulfill these functions" but nothing in the Rule requires them.  Id.  Instead, plaintiffs are free to use alternative means to add precision and substantiation to their allegations.  See id.

Similar to the claims brought pursuant to Section 10(b) of the Securities Exchange Act, Plaintiff's common law fraud claim is insufficiently pled.  Plaintiff does not plead with particularity what material misrepresentations or omissions were made by Defendants, but rather simply states that Defendants either failed to disclose or concealed the occurrence of unauthorized trades.  Further, the Complaint does not allege that Defendants intended that Plaintiff rely on, or that Plaintiff justifiably relied on, the alleged omissions and misrepresentations.  Rather, she states without support that she relied on Defendants' reputation

in assuming her assets would be monitored.  Compl. ¶ 11.  Before any defendant can be subjected to a fraud claim, the specifics of the alleged fraud need to be detailed.  The Complaint does not begin to do so.  Instead, it begins and ends with the rote recitation of the elements of a fraud claim, leaving Defendants to guess as to the alleged factual basis.  Such conclusory and nebulous allegations do not begin to rise to the level of particularly required by the Rules.

IV.     **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully ask this Court to grant their

motion to dismiss based on Plaintiff's failure to state a claim upon which relief can be granted.


Respectfully submitted,


"/s/" Paula D. Shaffner
Paula D. Shaffner
Attorney I.D. No. 43542
Jennifer Minuchi
Attorneys for Defendants
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102-2186
(215) 972-7777

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Motion to Dismiss and Memorandum of Law in Support thereof was served this 9th day of October, 2007 via electronic filing and/or First Class Mail, addressed as follows:

Jeffrey B. Gittleman, Esquire
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103

"/s/" Paula D. Shaffner
Paula D. Shaffner