IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOY TRAVIS, | |
|     Plaintiff, | |
| vs. | CIVIL ACTION NO. 2:07-cv-03484-BWK |
| THE VANGUARD GROUP, INC., and VANGUARD MARKETING CORPORATION, | JURY TRIAL DEMANDED |
|     Defendants. | |

FILED
OCT 2 2 2007
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## AMENDED COMPLAINT

Plaintiff, Joy Travis, brings this action for damages against The Vanguard Group, Inc. and Vanguard Marketing Corporation (together, "Vanguard") and alleges, upon knowledge with respect to her own acts, and upon information and belief with respect to all other matters, as follows:

### PARTIES

1.  Plaintiff Joy Travis ("Travis") resides at 1513 West Woodbank Way, West Chester, Pennsylvania 19380. At all relevant times, Travis maintained investment accounts with Vanguard. Until her recent marriage, Travis was known by her prior married name, Joy Delaney.

2.  Defendant The Vanguard Group, Inc. ("The Vanguard Group") is a Pennsylvania corporation with a business address at 100 Vanguard Boulevard, Malvern, Pennsylvania 19355.

58097

The Vanguard Group is one of the world's largest investment management companies and reportedly has more than 140 domestic funds and an additional 40 funds in international markets.

3. Defendant Vanguard Marketing Corporation ("Vanguard Marketing") is a Pennsylvania corporation with a business address at 100 Vanguard Boulevard, Malvern, Pennsylvania 19355. Vanguard Marketing is a subsidiary of The Vanguard Group. Vanguard Brokerage Services is a division of Vanguard Marketing and is the introducing firm for all Vanguard Brokerage Service accounts.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the first through third claims pursuant to Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa and 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the fourth through eighth claims alleged herein pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), as a substantial portion of the events giving rise to the claims occurred in this district. Venue is also proper in this district as both defendants are headquartered in this district.

## FACTUAL ALLEGATIONS

6. Travis, who is 37 years old, is unsophisticated in financial matters in general, and in the securities industry in particular. She has no experience or knowledge with respect to investments.

7. In 2003, Travis received a cash distribution from a grantor retained annuity trust previously established by her father. After consultation with her father and siblings, Travis decided to place a substantial portion of the cash distribution with Lydian Wealth Management

2

for investment. Lydian, now known as Convergent Wealth Advisors, is a wealth management company that has managed money for other members of Travis's family, managed the corpus of the trust before its expiration, and was selected by Travis's siblings to manage portions of their cash distributions from the trust.

8. In the late summer or early fall of 2003, Travis informed her then-husband John Delaney ("Delaney") that she intended to have Lydian manage the investment of a substantial portion of her cash distribution. Delaney, who had previously worked in the securities industry as a registered representative of Pruco Securities Corporation, Linsco/Private Ledger Corp. and Cap Pro Brokerage Services, Inc., insisted that Travis instead permit him to control the investment of her cash distribution. Delaney wanted to show Travis and her father that he could be trusted to properly invest the funds and could do a better job investing the money than Lydian.

9. Based upon Delaney's experience in the securities industry and the fact that he handled the family's finances, Travis permitted Delaney to open an account for her at Vanguard.

10. In October 2003, Delaney opened an account for Travis at the Vanguard Group by completing the Vanguard Nonretirement Account Registration Form. The account was an individual account that was opened in Travis's prior married name, Joy D. Delaney. Delaney recommended that Travis divide her initial investment of $600,000 among eleven different Vanguard funds. Travis followed his recommendation and instructed Vanguard to invest her initial deposit as follows:

| Fund Number | Fund Name | Investment Amount |
|---|---|---|
| 0063 | PA Tax-Exempt Money Market | $ 25,000 |
| 0036 | GNMA | $ 75,000 |
| 0044 | High Yield Tax-Exempt | $ 25,000 |
| 0084 | Total Bond Market Index | $100,000 |
| 0723 | Life Strategy Income | $ 25,000 |
| 0040 | 500 Index | $150,000 |
| 0052 | Health Care | $ 25,000 |
| 0072 | Pacific Stock Index | $ 25,000 |
| 0123 | REIT Index | $ 50,000 |
| 0860 | Small-Cap Value Stock Index | $ 50,000 |
| 0113 | Total International Stock Index | $ 50,000 |
| | | $600,000 |

11. At no time did Travis give either Delaney or defendants the authority to make any investments on her behalf other than those identified in paragraph 10 above.

12. Delaney, who knew that this investment represented the bulk of Travis's assets, assured her that this portfolio would satisfy Travis's conservative investment objectives, which she told him were providing income for the family while preserving the funds invested. The investments that she authorized, as set forth in paragraph 10 above, were such investments.

13. Not long after opening the account for Travis at Vanguard, Delaney became employed by the Vanguard Group and a registered representative of Vanguard Marketing. Delaney remained with Vanguard until early 2006.

14. In either late December 2003 or early January 2004, a brokerage account was opened in Travis's former married name (Joy D. Delaney) with Vanguard Brokerage Services, a division of Vanguard Marketing. This account was opened without Travis's authority, knowledge or consent.

15. Beginning in January 2004, defendants, through Delaney, their agent and employee, made the first of hundreds of unauthorized and unsuitable trades in Travis's accounts. Defendants, without the knowledge or consent of Travis, sold shares in Travis's Vanguard IRA

4

Tax Free fund and purchased and sold a number of high-risk options in the Vanguard Brokerage Services account opened in Travis's name.

16. Throughout 2004 and continuing through December 2005, defendants, without Travis's authority, knowledge or consent, liquidated each of the funds owned by Travis and used the proceeds to purchase and sell high-risk options in the Vanguard Brokerage Service account. In total, defendants, through Delaney, their agent and employee, made over **450** unauthorized and unsuitable trades in Travis's accounts. Attached as Exhibit A is a schedule of each unauthorized and unsuitable transaction.

17. Defendants, through Delaney, their agent and employee, knew that the liquidation of Travis's mutual funds and day-trading of options in her accounts was never authorized by Travis and certainly was not suited to her conservative investment objectives.

18. Vanguard had a duty to properly supervise Delaney and to monitor Travis's accounts. The fact that Delaney was Travis's husband did not relieve defendants' of their duty to supervise Travis's accounts. In fact, this relationship should have led to greater scrutiny of her accounts.

19. Each of the unauthorized and unsuitable transactions was made by Delaney during the course of and within the scope of his employment at Vanguard.

20. The conversion of Travis's balanced portfolio of mutual funds to the speculative trading of stock and options should have raised multiple red flags at Vanguard. Likewise, Delaney's pattern of day-trading options should have sounded alarm bells in Vanguard's compliance unit. Defendants, however, failed to take any steps to prevent the unauthorized and unsuitable trading in Travis's accounts. Indeed, defendants took no action to determine if the extensive trading in Travis's accounts during 2004 and 2005 was authorized or suitable.

21. Defendants knew or should have known that the trading in Travis's accounts was unauthorized and unsuitable. Defendants, however, either lacked a functioning system of controls to prevent Delaney from engaging in this unauthorized and unsuitable trading or simply ignored the fact that he was conducting hundreds of such trades in her accounts.

22. At all relevant times, Delaney handled the family's finances, opened account statements and related correspondence, paid the family's bills and took care of the paperwork associated with their bills and accounts. Since he handled the family's finances, Delaney and not Travis opened the account statements sent by Vanguard. Travis relied upon Delaney, defendants' agent and employee, to ensure that her investments at Vanguard continued to be suited to her investment objectives and to keep her informed about the status of her investments.

23. On many occasions from January 2004 through December 2005, Travis asked Delaney about the status of her investments with him at Vanguard. In response, Delaney did not inform Travis about the unauthorized and unsuitable trading in her accounts which were directly contrary to her stated objectives. Instead, Delaney provided Travis with positive assurances that everything in her accounts was satisfactory and that the accounts were doing well.

24. By December 2005, Travis had become concerned about her relationship with Delaney. As a result, and despite Delaney's continuing assurances that her investments were satisfactory and that the accounts were doing well, Travis opened her Vanguard account statement covering the prior month. Travis was shocked to find that her total account balance had fallen from $600,000 to less than $2,000. This was the first time that Travis had any idea that anything was amiss with her accounts since it was the defendants, through Delaney, who were assuring her on a constant basis that the accounts were doing well. Only after further

6

investigation did Travis discover the true breadth and scope of the unauthorized and unsuitable trading in her account.

25. Defendants participated in this scheme to defraud Travis for the purpose of generating fees and commissions from the day-trading of options and other unsuitable investments, which fees would be far more than could be earned by leaving Travis's investments in the mutual funds that she had approved.

## FIRST CLAIM FOR RELIEF – UNAUTHORIZED TRADING IN VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT

26. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

27. The unauthorized trades in Travis's accounts constitute a violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

28. Defendants carried out a plan, scheme or course of conduct that was intended to and did deceive Travis.

29. Defendants (a) employed devices, schemes and artifices to defraud; (b) failed to disclose and made untrue and misleading statements of material facts about Travis's accounts; and (c) engaged in acts, practices and a course of conduct that operated as a fraud and deceit upon Travis.

30. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal or not disclose the unauthorized trades.

31. Travis's accounts were non-discretionary accounts. At no time did Travis provide authorization for defendants or Delaney, their agent and employee, to exercise discretion or dominion over her investments.

32. Defendants, through Delaney, their agent and employee, made hundreds of trades in Travis's accounts without her authorization. All of the option and stock trading in her accounts was conducted without Travis's authority, knowledge or consent.

33. Defendants failed to disclose the unauthorized trading to Travis. Instead, when asked about the status of her investments, Delaney, their agent and employee, falsely assured Travis that everything was satisfactory.

34. Delaney, defendants' agent and employee, knew that the unauthorized trades were made without Travis's authority, knowledge or consent.

35. Defendants' internal controls should have identified the fact that Delaney was making hundreds of high-risk option trades without Travis's authority.

36. The defendants took advantage of Travis's lack of investment knowledge and permitted Delaney to make hundreds of unauthorized trades in Travis's account throughout 2004 and 2005.

37. Travis, an inexperienced investor, relied upon defendants, through Delaney, their agent and employee, to provide her with truthful information and full disclosure about activity in her investment accounts. Similarly, Travis relied upon defendants to properly manage and supervise their agents and employees, including Delaney, to ensure that her accounts were properly monitored.

38. Travis sustained damages as a direct result of the unauthorized trades in her accounts.

## SECOND CLAIM FOR RELIEF – UNSUITABLE TRADING IN VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT

39. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

40. Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by permitting the purchase and sale of high-risk options and stock in Travis's accounts that were not suited to her investment needs.

41. Defendants carried out a plan, scheme or course of conduct that was intended to and did deceive Travis.

42. Defendants (a) employed devices, schemes and artifices to defraud; (b) failed to disclose and made untrue and misleading statements of material facts about Travis's accounts; and (c) engaged in acts, practices and a course of conduct that operated as a fraud and deceit upon Travis.

43. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct that operated as a fraud and deceit upon Travis.

44. Despite the fact that her accounts were non-discretionary accounts, defendants, through Delaney, their agent and employee, exercised *de facto* control over Travis's investments. Delaney, by making the hundreds of unauthorized trades described in Exhibit A, exercised total control over the accounts.

45. Defendants, through Delaney, their agent and employee, purchased and sold hundreds of high-risk options in Travis's accounts. These transactions converted Travis's balanced portfolio into a highly speculative and risky portfolio that consisted of unsuitable investments for Travis. At no time did Travis express a desire to engage in the risky strategy of

the frequent day-trading of high-risk options and, in fact, had told Delaney that she wanted conservative investments that would produce income and preserve funds.

46. Defendants, through Delaney, their agent and employee, knew that: (a) the unauthorized trades were unsuitable for Travis and did not comport with her investment objectives; (b) Travis had no experience in trading stocks and options; (c) Travis did not authorize the transactions in her account; (d) the assets in her Vanguard account represented the bulk of her total assets; (e) Travis wanted to maintain a balanced portfolio; and (f) the pattern of frequent trading of high-risk options was not in character with a novice investor with no trading experience or knowledge. Nonetheless, defendants purchased and sold high-risk options in Travis's accounts, taking advantage of her lack of investment knowledge and experience.

47. These transactions subjected Travis to excessive and unauthorized exposure and risk.

48. Defendants did not disclose the risks associated with trading high-risk options, that the frequent purchase and sale of options was not suited to Travis's investment needs, or that this strategy was counter to her investment objectives. Instead, when asked about the status of her investments, Delaney, defendants' agent and employee, falsely assured Travis that everything was satisfactory and failed to inform Travis that he was making unauthorized and unsuitable investments in her accounts.

49. Travis, an inexperienced investor, relied upon defendants, through Delaney, their agent and employee, to provide her with truthful information and full disclosure about activity in her investment accounts. Similarly, Travis relied upon defendants to properly manage and supervise their agents and employees, including Delaney, to ensure that her accounts were properly monitored.

50. Travis sustained damages as a direct result of the unauthorized trades in her accounts.

### THIRD CLAIM FOR RELIEF – VIOLATION OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT

51. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

52. Defendants were controlling persons of Delaney, their employee and registered representative, within the meaning of Section 20(a) of the Securities Exchange Act.

53. Delaney committed a primary violation of Section 10(b) Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by conducting the unauthorized trades set forth in Exhibit A in Travis's accounts and by purchasing and selling high-risk options and stock in Travis's accounts that were not suited to her investment needs, and by otherwise engaging in the conduct alleged in the First and Second Claims for Relief.

54. Defendants had direct control and/or supervisory responsibility of Delaney, their agent, employee and registered representative, and, therefore, had the power to control or influence the particular transactions giving rise to the violations of Section 10(b) of the Exchange Act by Delaney as alleged herein.

55. Defendants had the ability and responsibility to supervise and monitor the conduct of Delaney but failed to do so as detailed herein.

56. As a direct and proximate cause of the wrongful conduct set forth herein, Travis sustained damages.

### FOURTH CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTY

57. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

11

58. Defendants induced Travis to place her trust and confidence in them in matters pertaining to her investments.

59. As a result, defendants stood as fiduciaries to Travis in matters pertaining to her investments and owed her a duty to act in good faith, with reasonable care, skill and diligence, and to advise her of all relevant facts relating to her investments.

60. Defendants breached their fiduciary duty to Travis by permitting Delaney, their agent and employee, to execute hundreds of unauthorized trades in her accounts.

61. Defendants breached their fiduciary duty to Travis by failing to properly supervise Delaney, failing to properly monitor her accounts and failing to keep her informed of all relevant facts relating to her investments.

62. Defendants further breached their fiduciary duty to Travis by permitting Delaney to purchase and sell high-risk options that were unsuitable considering her investment experience and needs.

63. Travis sustained damages as a direct result of the breaches by defendants of their fiduciary duties.

## FIFTH CLAIM FOR RELIEF – COMMON LAW FRAUD

64. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

65. Defendants permitted Delaney, their agent and employee, to make hundreds of unauthorized and unsuitable trades in Travis's accounts. Neither Delaney nor defendants ever informed Travis of the unauthorized and unsuitable trading in her account. Instead, when Travis inquired about the status of her investments, she was told by Delaney that all was satisfactory. This conduct is deceptive and fraudulent.

66. Defendants, through Delaney, their agent and employee, knew that: (a) the unauthorized trades were unsuitable for Travis and did not comport with her investment objectives; (b) Travis had no experience in trading stocks and options; (c) Travis did not authorize the transactions in her account; (d) the assets in her Vanguard account represented the bulk of her total assets; (e) Travis wanted to maintain a balanced portfolio; and (f) the pattern of frequent trading of high-risk options was not in character with a novice investor with no trading experience or knowledge. Nonetheless, defendants purchased and sold high-risk options in Travis's accounts, taking advantage of her lack of investment knowledge and experience.

67. Travis, an inexperienced investor, relied upon defendants, through Delaney, their agent and employee, to provide her with truthful information and full disclosure about activity in her investment accounts. Travis also relied upon defendants to properly manage and supervise their agents and employees, including Delaney, to ensure that her accounts were properly monitored.

68. Travis sustained damages as a direct result of defendants' fraudulent and deceptive conduct.

69. Defendants' conduct, as set forth in detail above, was malicious, wanton, willful and outrageous.

## SIXTH CLAIM FOR RELIEF – NEGLIGENCE

70. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

71. Defendants owed Travis a duty of care with respect to her investments. In particular, defendants owed Travis a duty of care to ensure that no trades would be conducted in

her account without her authorization, knowledge or consent. In addition, defendants owed Travis a duty of care to ensure that her investments were suited to her investment needs.

72. By engaging in the conduct described herein, defendants breached that duty of care.

73. Travis sustained damages as a proximate cause defendants' breaches of their duty of care.

## SEVENTH CLAIM FOR RELIEF – NEGLIGENT SUPERVISION

74. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

75. Defendants owed Travis a duty of care to properly supervise the actions of their agents and employees, including Delaney.

76. By allowing Delaney to engage in the conduct described herein, defendants breached their duty to supervise their agents and employees. In particular, defendants failed to supervise Delaney who was permitted to make hundreds of unsuitable transactions in Travis's accounts without her authority, knowledge or consent.

77. Defendants further breached their duty by failing to implement reasonable safeguards or establish and enforce rules necessary for the protection of their customers' investment accounts.

78. Defendants were reckless in their supervision of their agents and employees, including Delaney, and Travis's accounts.

79. Each of the unauthorized and unsuitable transactions was made by Delaney during the course of and within the scope of his employment at Vanguard.

80. Travis reasonably relied on defendants to properly supervise their agents and employees, including Delaney.

81. Travis sustained damages as a direct and proximate cause of defendants' breach of their duty of care.

## EIGHTH CLAIM FOR RELIEF – CONVERSION

82. Travis hereby incorporates by reference the above paragraphs as if they were fully set forth herein.

83. Defendants permitted hundreds of unauthorized trades to be made in Travis's accounts. Each of the unauthorized trades was made without obtaining the requisite authority from Travis. The unauthorized trades were all transacted without Travis's knowledge and consent.

84. Defendants, through Delaney, their agent and employee, exercised unauthorized dominion and control over Travis's accounts when they effected the unauthorized trades.

85. Defendants wrongfully interfered with Travis's ownership rights in her investments when they permitted the unauthorized trades in her accounts.

86. Defendants' conduct of converting Travis's investments has caused Travis to sustain damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment against defendants and in her favor for such compensatory and punitive damages in an amount to be determined at trial, plus interest and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury as to all claims in this action.

**BARRACK, RODOS & BACINE**

By: ___JBG222___
   Daniel E. Bacine
   Jeffrey B. Gittleman
   3300 Two Commerce Square
   2001 Market Street
   Philadelphia, PA 19103
   Phone: (215) 963-0600
   Fax: (215) 963-0838

Attorneys for Plaintiff

**FILED**

OCT 2 2 2007

**MICHAEL E. KUNZ, Clerk**
By_____Dep. Clerk

Dated: October 22, 2007

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Plaintiff's Amended Complaint was served this 22nd day of October, 2007 via electronic mail and Hand Delivery, addressed as follows:

> Paula D. Shaffner, Esquire
> Jennifer Minuchi, Esquire
> Saul Ewing LLP
> Centre Square West
> 1500 Market Street, 38th Floor
> Philadelphia, PA  19102-2186

/s/ JBG222
Jeffrey B. Gittleman

FILED
OCT 2 2 2007
MICHAEL E. KUNZ, Clerk
By_____Dep Clerk