IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TRAVIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 2:07-cv-03484-BWK |
| | : | |
| THE VANGUARD GROUP, INC., and | : | |
| VANGUARD MARKETING | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

# O R D E R

**AND NOW**, this _____ day of _____, 2007, upon consideration of Defendants The

Vanguard Group, Inc., and Vanguard Marketing Corporation's Motion to Dismiss Plaintiff's

Amended Complaint and any Response thereto, it is hereby **ORDERED** that Defendants'

Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim upon which relief

can be granted under Fed. R. Civ. P. 12 (b)(6) is **GRANTED** and that all counts of the Amended

Complaint are **DISMISSED WITH PREJUDICE**.


BY THE COURT:


_____

Hon. Bruce W. Kauffman

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TRAVIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 2:07-cv-03484-BWK |
| | : | |
| THE VANGUARD GROUP, INC., and | : | |
| VANGUARD MARKETING | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS THE VANGUARD GROUP, INC., AND VANGUARD MARKETING CORPORATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants The Vanguard Group, Inc., and Vanguard Marketing Corporation respectfully move to dismiss Plaintiff's Amended Complaint with prejudice pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure for the reasons more fully set forth in the accompanying Memorandum of Law, which is incorporated herein by reference.

Respectfully submitted,

"/s/" Paula D. Shaffner
Paula D. Shaffner
Attorney I.D. No. 43542
Attorney for Defendants
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102-2186
(215) 972-8695

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOY TRAVIS,                                          :
                                                     :
                         Plaintiff,                  :
                                                     :
                  v.                                 :          CIVIL ACTION NO. 2:07-cv-03484-BWK
                                                     :
THE VANGUARD GROUP, INC., and                        :
VANGUARD MARKETING                                   :
CORPORATION,                                         :
                                                     :
                         Defendants.                 :

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS THE VANGUARD GROUP, INC., AND VANGUARD MARKETING CORPORATION'S MOTION TO DISMISS

### I.      PRELIMINARY STATEMENT

        Defendants The Vanguard Group, Inc. and Vanguard Marketing Corporation (collectively, "Vanguard" or "Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Complaint.  On October 9, 2007, Vanguard filed a Motion to Dismiss Plaintiff's original Complaint on the basis that the Complaint clearly was filed well beyond any applicable statute of limitation.  The Complaint also failed completely to plead properly a claim for fraud.  Instead of replying to the Motion to Dismiss, Plaintiff chose to file an Amended Complaint.  The Amended Complaint is stunning for two reasons.  First, it fails to correct any of the deficiencies of the initial Complaint.  Second, the new allegations provide even greater and even more powerful support for the first Motion to Dismiss.

        Plaintiff Joy Travis asserts a variety of legal claims allegedly stemming from her investments made through Defendants.  These claims are hopelessly dated and filed well outside

any applicable statute of limitations.  Plaintiff alleges that she invested in a variety of mutual

funds to provide income with no risk to principal.  Plaintiff now admits explicitly in the

Amended Complaint that she made the mutual fund investments through her husband when he

was not an employee of Vanguard.  Within months of her mutual fund investments, redemptions

of the mutual funds began and option contracts were purchased and sold.  Vanguard dutifully and

explicitly conveyed accurate information to Plaintiff in unmistakable terms each and every

month in her monthly account statements.  Well over two years before this action was filed (the

applicable statute of limitations period), Plaintiff's accounts had declined from $600,000 to

under $10,000.  Plaintiff turned a blind eye to her investments – allegedly ceding control to her

husband – and chose to ignore her monthly account statements until December 2005, when her

marriage began to fail.  Such obvious neglect of her obligations ***does not*** toll the running of the

statute of limitations.

In her Amended Complaint, Plaintiff tries to avoid the obvious impact of failing

to open monthly account statements by adding allegations that her husband repeatedly gave her

positive assurances about her accounts.  This belated attempt to presumably toll the statute of

limitations is both unpersuasive and ineffective as a matter of law.  Her husband's positive

assurances do not negate the notice that the statements themselves provided to Plaintiff.  Her

claims remain time barred.

In addition, Plaintiff still has not properly plead a fraud claim.  The Amended

Complaint does at least identify the alleged wrongdoer at Vanguard – her husband.

Unfortunately for Plaintiff, the only accompanying detail about her husband reinforces the

position that Vanguard articulated in its Motion to Dismiss;  namely that her husband was not

acting on behalf of Vanguard at all.  Plaintiff has added no factual allegations that would suggest

what, if anything, her husband did in his capacity as a Vanguard employee to adversely effect her account.  Finally, in the Amended Complaint, Plaintiff has eliminated the only allegation that she raised previously to attempt to plead that she justifiably relied on Vanguard:  the allegation that she was relying on Vanguard's reputation.  In sum, the Amended Complaint fails to plead fraud with the particularity required by law, and these claims should be dismissed on that basis as well.

## II.   OVERVIEW OF ALLEGATIONS

Plaintiff alleges that, in October 2003, she opened an account with Vanguard under her married name, Joy Delaney, and invested $600,000 in various mutual funds. Amended Complaint ¶ 9.  Plaintiff now concedes explicitly that this account was opened before her husband, John Delaney, became an employee of Vanguard.  Amended Complaint ¶ 13. Plaintiff also includes in this section the only significant new factual detail, all related to events that occurred *before her husband formed a relationship with Vanguard*.  As a result, we now learn that Plaintiff chose to follow her husband's advice and permit him to control her investments before he was affiliated with Vanguard.  Amended Complaint ¶¶ 7-14.  Plaintiff explains that the cash she invested came from a family trust which was managed for other family members by a wealth management company.  Amended Complaint ¶ 7.  Plaintiff separated from the other family members and ceded control of her share to her husband.  Amended Complaint ¶ 8.

Did Plaintiff do so because of his superior investing skill, his greater experience than the wealth management firm, or some other reason?  From the allegations in the Amended Complaint, it is clear that it could not have been because of any connection between her husband and Vanguard because, as Plaintiff admits, he was not even employed by Vanguard at the time. Indeed, Plaintiff claims that she did so to give her husband a chance to prove himself – "to show

[her] and her father that he could be trusted to properly invest the funds and could do a better job investing the money than [the wealth management company]".  Amended Complaint ¶¶ 7, 8. Plaintiff then details that she permitted her husband to open an account for her at Vanguard, allowing her husband to complete the paperwork.  Amended Complaint ¶ 10.[1]  Plaintiff notes that she accepted her husband's mutual fund recommendations and was assured by him "that this portfolio would satisfy Travis's conservative investment objectives, which she told him were providing income for the family while preserving the funds invested."  Amended Complaint ¶ 12.  Thus, the only alleged discussion regarding investment objectives occurred before Delaney was a Vanguard employee.  Plaintiff never alleges that she ever spoke to anyone at Vanguard before investing, nor does she allege that she ever communicated her alleged "investment objectives" to Vanguard.

The Amended Complaint alleges for the first time that months later, a brokerage account was opened at Vanguard without her knowledge or consent.  Amended Complaint ¶ 14. Thereafter, unlike the original Complaint which referenced a single account, the Amended Complaint makes allegations about the "*accounts*."  Plaintiff offers no facts or explanations about who opened the brokerage account or how it was opened.  She does not even bother to explain how the opening of the account would be actionable or how, assuming that her husband opened the account, he used his employment at Vanguard to effect the account opening.

Plaintiff claims that hundreds of unauthorized and unsuitable trades were made in her "accounts" by her husband.  Amended Complaint ¶ 15.  She also alleges that "Defendants" sold shares in her Vanguard PA Tax Free Fund and purchased and sold high-risk options in the Vanguard Brokerage Services Account".  Amended Complaint ¶ 15.  She also alleges that this

---

[1]    These allegations contradict the original Complaint where Plaintiff suggested that she, not her husband, opened the account.  Original Complaint ¶ 9.

unauthorized and unsuitable activity began in January, 2004 – over 3 ½ years before Plaintiff

filed this action.  Amended Complaint ¶ 15.

　　　　　According to Plaintiff, it was her husband who liquidated the mutual funds and

made unauthorized and unsuitable option trades.  Amended Complaint ¶¶ 16, 17.  Having taken

the opportunity to file an Amended Complaint, Plaintiff, however, still does not allege any *fact*

that would tend to show that her husband did so while acting as an employee or agent of

Vanguard, rather than as the designated head of the family's finances and the person to whom

she willingly ceded control of her investments.  Indeed, other than implicating her husband

(whom she has not sued in this action) in a generic way as Vanguard's "agent and employee,"

Plaintiff fails to allege any facts regarding the actual duties of her husband at Vanguard, the

scope of his employment, any authority or apparent authority he had over the account as a result

of any action of Vanguard, or any Vanguard-recognized connection between her husband and her

account. [2]

　　　　　A critical and determinative fact that Plaintiff continues to acknowledge in the

Amended Complaint, however, is that Vanguard sent her account statements.  Amended

Complaint ¶ 22.[3]  Specifically, Vanguard sent monthly account statements to Plaintiff at 1513

West Woodbank Way, West Chester, PA 19380 – the same address that Plaintiff identifies in the

---

[2]　　　Further, Plaintiff alleges no plausible explanation for why Vanguard Marketing Corporation – a discount broker that offers only client-directed brokerage accounts – would open a brokerage account in her name without being asked and then assume discretionary trading authority over that account.  Nor does Plaintiff allege any possible motive that The Vanguard Group (the transfer agent and an investment advisor for Vanguard mutual funds) had to liquidate Plaintiff's *Vanguard* mutual fund accounts without her consent.

[3]　　　Plaintiff's monthly account statements for the period December 31, 2003 through December 31, 2005 are attached hereto as Exhibit A.  The Court may consider these statements in ruling on this motion to dismiss. See, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting [a] motion to dismiss into one for summary judgment.").  See also Winer Family Trust v. Queen, 2007 WL 2753734, at *5 (3d Cir. Sept. 24, 2007) (court may consider documents referred to in the Complaint or on which the Complaint is based).

Amended Complaint as her residence.  Amended Complaint ¶ 1.  Beginning with her January 31, 2004 year-to-date statement, Plaintiff's monthly account statements for 2004 and 2005 disclosed all of the mutual fund redemptions and brokerage trades that Plaintiff now belatedly contends she did not authorize.  Moreover, from the first page of each statement alone, Plaintiff could see the following sharp decline in the value of her portfolio on a month-to-month basis:

| Date | Value |
| --- | --- |
| January 31, 2004 | $626,007.82 |
| February 29, 2004 | $631,104.01 |
| March 31, 2004 | $557,442.11 |
| April 30, 2004 | $494,166.13 |
| May 31, 2004 | $474,576.82 |
| June 30, 2004 | $432,570.34 |
| July 31, 2004 | $360,536.14 |
| August 31, 2004 | $341,618.48 |
| September 30, 2004 | $274,681.38 |
| October 31, 2004 | $270,221.50 |
| November 30, 2004 | $261,479.95 |
| December 31, 2004 | $166,644.72 |
| January 31, 2005 | $ 77,181.76 |
| February 28, 2005 | $ 40,178.50 |
| March 31, 2005 | $ 35,770.45 |
| April 30, 2005 | $ 36,589.37 |
| May 31, 2005 | $ 16,590.83 |

June 30, 2005 $ 29,355.59

July 31, 2005 $ 6,979.89

Despite receiving monthly account statements from Vanguard, Plaintiff waited over 3½ years after the alleged unauthorized trading began to file this lawsuit.  She asserts claims against Defendants for (1) Unauthorized Trading in Violation of Section 10(b) of the Securities Exchange Act, (2) Unsuitable Trading in Violation of Section 10(b) of the Securities Exchange Act, (3) Control Person Liability under Section 20(a) of the Securities Exchange Act, (4) Breach of Fiduciary Duty, (5) Common Law Fraud, (6) Negligence, (7) Negligent Supervision, and (8) Conversion.

Plaintiff seeks to excuse the late filing of her claims by alleging that she "did not open the account statements sent to her by Vanguard" because "Delaney handled the family's finances."  Amended Complaint ¶ 22.  Plaintiff adds new allegations in the Amended Complaint that she asked her husband about her investments and her *accounts* and was given "positive assurances" that her *accounts* "were doing well."  Amended Complaint ¶¶ 23, 24.  As discussed below, Plaintiff's wholesale abdication of any responsibility for following the performance of and transactions in her accounts does not absolve her of her legal responsibility to do so.  The weak attempt to avoid the statutory bar by referring to positive assurances by her husband likewise does not change the legal implications of having received, but ignored, the monthly statements.  This action, filed well over two years after the alleged unauthorized and unsuitable redemption of mutual fund shares and purchase of options, is untimely and should be dismissed.

III.     **ARGUMENT**

A.     **LEGAL STANDARD FOR GRANTING MOTION TO DISMISS.**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a Complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The facts of the Complaint should be viewed in a light most favorable to the Plaintiff. See Tunnel v. Wiley, 514 F.2d 971, 975 n.6 (3d Cir. 1975).  Those facts must be accepted as true.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  However, the court need not accept "a complaint's bald assertions or legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), or unsubstantiated conclusions or factual inferences that are unwarranted.  Saxton v. Cent. Pa. Teamsters Pension Fund, No. Civ. A. 02-CV-986 2003 WL 22952101, at *3 (E.D. Pa. Dec. 9, 2003).

The expiration of a statute of limitation is an appropriate inquiry in a motion to dismiss.  See, e.g.,  Benak v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 n.14 (3d Cir. 2006) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief  . . . provides a basis for a motion to dismiss under Rule 12(b)(6).").  Indeed, the Court of Appeals for the Third Circuit has repeatedly upheld the dismissal of time-barred securities fraud claims under Rule 12(b)(6).  See, e.g., In re Exxon Mobil Corp. Sec. Litig., No. 05-4571 2007 U.S. App. LEXIS 20460, at *36 (3d Cir. Aug. 27, 2007) (affirming 12(b)(6) dismissal of untimely securities fraud claims); DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 210 (3d Cir. 2007) (same); Benak, 435 F.3d at 397 (same); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1318 (3d Cir. 2002) (same); see also In re American Business Fin. Services, Inc. Sec. Litig., No. 05-232, 2007 WL 81937, at *6-7 (E.D. Pa. Jan. 9, 2007) (granting motion to dismiss untimely Securities Act claims).

**B.**     **PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

All of Plaintiff's claims are governed by a two-year statute of limitations.  Each is barred by Plaintiff's failure to file this action within two years. The two-year statute of limitations began to run on Plaintiff's claims no later than when she discovered or in the exercise of reasonable diligence should have discovered the basis for her claims.  Beginning with her statement dated January 31, 2004, Plaintiff received monthly account statements from Vanguard disclosing all of the mutual fund redemptions and brokerage trades that she belatedly contends – over 3½ years later – were unauthorized and unsuitable.  Had Plaintiff in the exercise of reasonable diligence looked at her statements, she would have discovered the basis for her claims well before August 22, 2005 – two years before she filed this action.  By that date, Plaintiff had received 19 monthly statements from Vanguard reflecting a drop in the value of her accounts from $626,007.82 as of January 31, 2004 to just $6,979.89 as of July 31, 2005.  Because Plaintiff's claims are time-barred, the Court should dismiss the entire Amended Complaint with prejudice.

**1.**     **Plaintiff's Section 10(b) Claims Are Barred by the Two-Year Statute of Limitations Because Plaintiff Had Notice of the Alleged Fraudulent Activity Starting With the Statement Dated January 31, 2004.**

Plaintiff was required to bring her claims under Section 10(b) of the Securities Exchange Act by the *earlier* of (1) two years after the discovery of the facts constituting the alleged violation or, (2) five years after such violation allegedly occurred.  28 U.S.C. § 1658(b).  The Third Circuit applies an inquiry notice standard to determine when the statute of limitations begins to run in securities fraud actions.  See NAHC, 306 F.3d at 1318 (adopting inquiry notice

standard for securities fraud actions).  As the Court of Appeals for the Third Circuit has

explained:

> Under the inquiry notice standard, the [statute of limitations]
> period begins to run when the plaintiffs discovered **or in the
> exercise of reasonable diligence should have discovered** the
> basis for their claim against the defendant. Whether the plaintiffs,
> in the exercise of reasonable diligence, should have known of the
> basis for their claims depends on whether they had **sufficient
> information of possible wrongdoing to place them on inquiry
> notice** or to excite storm warnings of culpable activity.  The test
> for storm warnings is an objective one, based on whether a
> reasonable investor of ordinary intelligence would have discovered
> the information and recognized it as a storm warning.

Id. at 1325-26. (citations and quotations omitted) (emphasis added).  "Plaintiffs cannot avoid the

time bar simply by claiming they lacked knowledge of the details or narrow aspects of the

alleged fraud.  Rather, the clock starts when they should have discovered the general fraudulent

scheme." DeBenedictis, 492 F.3d at 216.  "Once on inquiry notice, plaintiffs have a duty to

exercise reasonable diligence to uncover the basis for their claims. . . ." NAHC, 306 F.3d at

1326.  Plaintiffs who "chose not to investigate" when "storm warnings existed" will be

"deem[ed] . . . on inquiry notice of their claims." Benak, 435 F.3d at 401 ("If [plaintiffs] have not

shown such diligence, the knowledge they would have acquired through investigation is imputed

to them.").

      In applying the inquiry notice standard, the Third Circuit has stated that

"**investors are presumed to have read** prospectuses, quarterly reports, and **other information**

**related to their investments**." DeBenedictis, 492 F.3d at 216 (quoting Mathews v. Kidder,

Peabody & Co., Inc., 260 F.3d 239, 252 (3d. Cir. 2001)) (emphasis added).  Accordingly, for

statute of limitations purposes, investors are charged with knowledge of the contents of their

account statements, even if they claim not to have read those statements.  See, e.g., Norniella v.

Kidder Peabody & Co. Inc., 752 F. Supp. 624, 628 (S.D.N.Y. 1990) (holding that "duty of inquiry was triggered" by plaintiffs' receipt of account statements).

Courts have dismissed claims for unauthorized or unsuitable trading as time-barred where, as here, the plaintiff received or had access to account statements detailing the contested trades yet did nothing to investigate her claims.  For example, in Appel v. Kidder, Peabody & Co, Inc., the court granted the defendant's motion to dismiss a "churning" claim on statute of limitations grounds.  628 F. Supp. 153, 158 (S.D.N.Y. 1986).  The court held that the plaintiffs should "in the exercise of reasonable diligence" have discovered the alleged fraudulent trading in their account based upon the confirmations and monthly account statements that they received.  Id. at 157-58.  The court brushed aside the plaintiffs' argument that they did not read their confirmations and statements and, therefore, should not be charged with knowledge of their contents.  As the court aptly put it, "[p]laintiffs may not close their eyes and say they do not see what is perfectly obvious."  Id. at 157-158.

Similarly, in Rodriquez Canet v. Morgan Stanley & Co., 419 F. Supp. 2d 90 (D.P.R. 2006), the court held that claims for unsuitable and unauthorized investments were time-barred because "there were sufficient facts available in the monthly statements to alert a reasonable individual to a possible wrongdoing and trigger the corresponding duty to investigate."  Id. at 96.  The alleged unauthorized investment was disclosed when purchased, and the court reasoned that "any reasonable investor would have been prompted to inquire to the nature of its purchase by a mere reading of this item."  Id.  The court also found that the plaintiff should have discovered the basis for her suitability claim.

> According to the complaint, the purpose of the account was for plaintiff to seek a stable source of income, thus the account was to be managed in a conservative manner.  Hence, any reasonable investor in plaintiff's position would have reacted when faced with

the steady and significant decline of her investment for a period of
close to a year when the account value dipped close to 40% of the
initial invested sums.

Id. (quotations and citations omitted).  Responding to the plaintiff's claim that she did not

receive any account statements, the court noted that the plaintiff did not allege that she "did not

have access to them or opportunity to review them."  Id.  Regardless, the court held that the

plaintiff should have taken steps to periodically ascertain the status of her account and, at a

minimum, had a duty to inform herself as to how her investments were performing.  Id.  Because

the plaintiff "failed to look" at the "storm warnings [that] were there," the court dismissed her

claims on statute of limitations grounds.  Id. at 96.

Numerous other courts have reached similar results.  See, e.g., Koke v. Stifel,

Nicolaus & Co. Inc., 620 F.2d 1340, 1343-44 (8th Cir. 1980) (affirming dismissal of securities

fraud claim and explaining that plaintiff "was not free to ignore" account statements that

disclosed allegedly unsuitable investments); Kosovich v. Thomas James Assocs., Inc., No. 93-

Civ-5443, 1995 WL 135582, at *3-4 (S.D.N.Y. Mar. 29, 1995) (dismissing securities fraud claim

and holding that plaintiff was on inquiry notice of allegedly unsuitable investments from account

statements); Salzman v. Prudential Secs. Inc., No. 91 Civ. 4253, 1994 WL 191855 (S.D.N.Y.

May 16, 1994) (holding that a substantial drop in value of investment that contradicts investment

objectives triggers a duty to inquire); Lenz v. Associated Inns and Restaurants Co. of Amer., 833

F. Supp. 362 (S.D.N.Y. 1993) (holding that investor cannot ignore economic status of investment

and avoid the bar of a statute of limitations); Norniella, 752 F. Supp. at 628 (dismissing churning

claim and holding that "duty of inquiry was triggered" by plaintiff's receipt of account

statements); Holtzman v. Proctor, Cook & Co. Inc., 528 F. Supp. 9 (D. Mass. 1981) (holding that

investor cannot ignore losses reflected in the monthly account statements and prevent the running of the statute of limitations).

Here, too, Plaintiff's securities fraud claims should be dismissed because they are barred by the two-year statute of limitations.  The simple fact of the matter is that the alleged fraud, which Plaintiff now claims, would have been starkly evident on every single monthly account statement she received.  With respect to Plaintiff's new allegation that the Vanguard Brokerage Services account was opened without her authority or consent, simply opening any account statement would have alerted her to the fact that she had a Vanguard Brokerage Services account and that it was active.  The alleged unauthorized option trades are set forth in great detail over multiple pages in each and every monthly account statement.  The redemption of mutual fund assets also was detailed on a monthly basis in the same statements.  With respect to the suitability claim, the concept that Plaintiff was invested for income with no risk of loss of principal is directly contradicted by the monthly decline in the account value.  Within the first six months, Plaintiff's accounts had declined in value by almost 30%.  By the end of December 2004, the accounts had dwindled to a total value of $166,644.72.  This information, delivered to Plaintiff well outside the statute of limitations period, vividly demonstrates to any reasonable investor that there is a contradiction between her alleged investment objectives and her account performance.  The import of even a cursory review of the account statements is best demonstrated by Plaintiff herself in the Amended Complaint.  Plaintiff alleges that when she finally decided to open a monthly account statement, she was "shocked" to find that her balance had fallen to less than $2,000.  Amended Complaint ¶ 24.  No doubt this same "shock" would have existed had Plaintiff looked at her July 2005 account statement – **received over two years**

**prior to the commencement of this action** – which showed a value of $6,979.89 on the very first page.

Plaintiff tries to avoid the dismissal of her claims by alleging repeatedly in the Amended Complaint that her husband provided positive assurances that her accounts were doing well.  Why her husband would speak to her about *accounts, plural*, when Plaintiff claims she knew of one mutual fund account only (and never knew of the Vanguard Brokerage Services account) is a mystery.  Regardless, as discussed previously, Plaintiff cannot save this case by stating that she let her husband open the statements in his role of handling the family's finances.  Nor can she save it by adding new allegations that he offered her positive assurances.  Those positive assurances were directly contradicted by the account statements.  Plaintiff's claims are barred by the notice those statements provided.

A strikingly similar argument was rejected in Goodman v. Shearson Lehman Bros., 698 F. Supp. 1078, 1082-83 (S.D.N.Y. 1988).  In *Goodman*, Plaintiff ceded control of her Shearson accounts to her husband.  Shearson had sent plaintiff monthly account statements showing the purchase and sale of options, a type of trading which she claimed was inconsistent with her investment objectives.  Id. at 1081.  The court noted that if the plaintiff/wife had exercised "reasonable diligence in monitoring her accounts, there can be little doubt that plaintiff would have discovered the fraud…".  Id.  In trying to avoid dismissal based upon the expiration of the applicable statute of limitations, plaintiff argued that her husband had misled her about the accounts, telling her all was well, that he was "building a 'very strong position', and that money would never be a problem."  Id.  The court held that these assurances by the husband did not toll commencement of the limitations period.  Id. at 1083.  See also Ocrant v. Dean Witter & Co.,

502 F.2d 854, 858 (10th Cir. 1974) (wife's reliance on the skill of her licensed broker husband as an excuse for her failure to examine monthly account statements was soundly rejected).

   This same approach, holding a spouse accountable for knowledge of information in an account statement despite improper actions by the other spouse, led a court recently to vacate an arbitration award.  In <u>Citigroup Global Mkts., Inc. v. Bacon</u>, No. H-05-3849, 2007 U.S. Dist. LEXIS 56779 (S.D. Tex. Aug. 2, 2007), a woman obtained an arbitration award against Smith Barney as a result of her husband's transfer of money from her retirement account without authorization.  The court vacated the award since the plaintiff had failed to timely notify Smith Barney of the unauthorized transaction, which was plainly evident on the monthly account statement.  <u>Id.</u> at *6-*8.  Plaintiff claimed that her husband hid the monthly statements from her. <u>Id.</u> at *6.  The court held that Smith Barney "cannot choose whether a client reads her mail or to whom she may delegate its being read.  [The wife] has no evidence of Smith Barney's knowledge of [the husband's] defalcation.  To contend that Smith Barney exercised discretionary control over [her account] and knowingly permitted unauthorized withdrawals is absurd."  <u>Id.</u> at *6-*7.  <u>See also</u> <u>McMickle v. Girard Bank</u>, 515 A.2d 16 (Pa. Super. 1986) (for statute of limitations purposes, plaintiff charged with knowledge of alleged unauthorized transactions evident in monthly statements despite the fact that the lawyer she designated to receive the statements had perpetrated the fraud).

   In short, Plaintiff was on inquiry notice of the basis for her securities fraud claims long before August 22, 2005 – two years before she filed this action.  Her new allegation that her

husband gave her positive assurances does not change that conclusion.  Accordingly, those claims are time-barred. [4]

> 2.  **Plaintiff's Remaining Claims Are Barred by the Two-Year Statute of Limitations Because Pennsylvania's Discovery Rule Does Not Apply.**

Plaintiff's claims for breach of fiduciary duty, common law fraud, negligence, negligent supervision, and conversion are likewise time-barred.  Each of those claims is governed by a two-year statute of limitations.  42 Pa. Cons. Stat. § 5524; see also Nw. Mut. Life Ins. Co. v. Babayan, No. Civ. A. 03-717, Civ. A 03-1622, 2004 WL 1902516, at * 22-25 (E.D. Pa. Aug 25, 2004) (barring a claim for breach of fiduciary duty and negligence based on two-year statute of limitations under 42 Pa. Cons. Stat. § 5524); Elite Sportswear Prods., Inc. v. New York Life Ins. Co., Civ. A. No. 05-CV-5181, 2006 WL 3052703, at *5 (E.D. Pa. Oct. 24, 2006) (barring a claim for fraud based on two-year statute of limitations under 42 Pa. Cons. Stat. § 5524); McGee v. Proctor & Gamble Distrib. Co., 445 F. Supp. 2d 481, 494  (E.D. Pa. 2006) (barring a claim for negligent supervision based on two-year statute of limitations under 42 Pa. Cons. Stat. § 5524); Gannon v. Nat'l R. R. Passenger Corp., No. Civ. A. 03-4501, 2004 WL 1274384, at * 2 (E.D. Pa. June 10, 2004) (stating that claims for conversion in Pennsylvania are governed by two-year statute of limitation in 42 Pa. Cons. Stat. § 5524(3)).

"There is a strong policy in Pennsylvania courts favoring the strict application of statutes of limitations."  Kingston Coal Co. v. Felton Mining Co. Inc., 690 A.2d 284, 288 (Pa. Super. 1997).  As a general rule, "the statute of limitations begins to run as soon as the right to institute and maintain suit arises; lack of knowledge, mistake, or misunderstanding do not toll the

---

[4]     Plaintiff's claim for control person liability under Section 20(a) of the Securities Exchange Act is predicated on the 10b-5 claim.  Once the securities fraud claim is dismissed, the Section 20(a) claim must be dismissed as well.  In re Exxon Mobil Corp. Secs. Litig., 500 F.3d 189 (3d Cir. 2007).

running of the statute of limitation." Id. (quoting Pocono Int'l Raceway v. Pocono Produce Inc., 468 A.2d 468, 471 (Pa. 1983)).  Here, Plaintiff's ability to institute suit arose and the two-year statute of limitations began to run by January 2004, when the alleged unauthorized and unsuitable trading began in her accounts.  Accordingly, the statute of limitations expired on Plaintiff's state law claims in January 2006 – over 1½ years before Plaintiff filed this action.

Plaintiff cannot avoid dismissal of her claims by attempting to rely on the "discovery rule."  The discovery rule is a judicially-created doctrine that provides that the statute of limitations for tort claims does not begin to run until a party "knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct".  Larthey v. Bland, 532 A.2d 456, 459 (Pa. Super. 1987), allocatur denied, 544 A.2d 1343 (1988).  The discovery rule's application, however, is narrowly circumscribed.  See Harry Miller Corp. v. Mancuso Chems., Ltd., 469 F. Supp. 2d 303, 313 (E.D. Pa. 2007) ("Pennsylvania courts apply the discovery rule in only the most limited of circumstances.").  The "salient point giving rise to the discovery rules application is the inability of the injured, **despite the exercise of reasonable diligence**, to know that he is injured and by what cause."  Allen v. Stewart Title Guar. Co., No. 06-CV-2426, 2007 WL 916859, at *3 (E.D. Pa. Mar. 30, 2007) (quoting Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005)) (emphasis added).

Reasonable diligence is "an objective or external [standard] that is the same for all individuals."  Kingston Coal, 690 A.2d at 289.  The Pennsylvania Supreme Court has explained that "there are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful."  Fine, 870 A.2d at 858.  Accordingly, "[w]hen information is available, the failure of a plaintiff to make the proper inquiries is failure to exercise reasonable diligence **as a matter of law**."  Kingston Coal,

690 A.2d at 289 (emphasis added); <u>see also</u> <u>Allen</u>, 2007 WL 916859 at *3 (granting motion to dismiss time-barred claims and holding that discovery rule did not apply because plaintiff was on constructive notice of title insurance rate schedule published in Title Insurance Act).

Plaintiff bears the burden to both plead and prove that the discovery rule should be applied.  As the Pennsylvania Superior Court has held:

> The plaintiff has the burden of justifying any delay beyond the date on which the limitation would have expired if computed from the date on which the acts giving rise to the cause of action allegedly occurred.  He must allege and prove facts which show that he made reasonable efforts to protect his interests and which explain why he was unable to discover the operative facts for his cause of action sooner than he did.

<u>Bickell v. Stein</u>, 435 A.2d 610, 612 (Pa. Super. 1981).

Plaintiff does not, and cannot, meet her burden.  As discussed above, there is no doubt that Plaintiff would have known of the basis for her alleged claims had she bothered to open the monthly account statements that Vanguard sent directly to her home.  Plaintiff's failure to make <u>any</u> inquiries in response to this available information about her accounts constitutes failure to exercise reasonable diligence as a matter of law.  <u>See</u> <u>Kingston Coal</u>, 690 A.2d at 289.  Thus, for the same reasons that Plaintiff was on inquiry notice of her securities fraud claims, she likewise should have known of the basis for her state law claims.  Thus, those claims also are time-barred and should be dismissed.

### C.   ALTERNATIVELY, PLAINTIFF'S CLAIMS PURSUANT TO SECTION 10(B) OF THE SECURITIES EXCHANGE ACT FAIL BECAUSE THEY ARE INADEQUATELY PLED.

To prevail on a Section 10(b) and Rule 10b-5 claim, a plaintiff must plead the following elements:

> (1) a material misrepresentation (or omission); (2) *scienter*, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction causation; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss.

Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005) (internal citations omitted).  In pleading these elements, a plaintiff must comply with the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b).

The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B) (relating to non-class action securities fraud actions).  Further, the PSLRA requires that a plaintiff plead the applicable mental state with particularity. Id.   To be precise, with respect to each act or omission alleged to violate [the PSLRA], a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  Id.

The Supreme Court recently clarified the standards for pleading scienter in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007).  The Court held that to survive a motion to dismiss, a plaintiff must plead facts giving rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Id. at 2505.  This is an "inherently comparative" inquiry.  Id. at 2510.  As the Court explained:

> The strength of an inference cannot be decided in a vacuum.  The inquiry is inherently comparative:  How likely is it that one conclusion, as compared to others, follows from the underlying facts?  To determine whether the plaintiff has alleged facts that

give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. . . .[T]he inference of scienter must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations.  A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

Id. at 2510; see also Winer Family Trust, 2007 U.S. App. LEXIS 22620 at * 12-13.  (A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the fact alleged.") (citing Tellabs, 127 S. Ct. at 2510).

In addition to PSLRA requirements, a plaintiff alleging fraud under the Securities Exchange Act must comply with the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b).  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276 (3d Cir. 2006).  Rule 9(b), as applied to Section 10(b) claims, requires a plaintiff to plead "(1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage."  Id. (quoting In re Rockefeller Ctr. Prop. Inc., Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002)).  Rule 9(b) also requires a plaintiff to "identify the source of the allegedly fraudulent misrepresentation or omission."  Id.  At a minimum, Rule 9(b) requires that plaintiffs "support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where, and how' of the events at issue."  Id. at 276-77 (quoting In re Burlington Coat Factory, 114 F.3d at 1434).  Finally, to the extent that Rule 9(b) permits general pleading with respect to mental state, the PSLRA

supersedes Rule 9(b) as it relates to Rule 10b-5 actions.  Id. at 277.  Thus, a plaintiff must meet

the higher threshold for pleading mental state by alleging "with particularity [the] facts giving

rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. §

78u-4(b)(2).

Finally, where a 10b-5 claim is based upon alleged unsuitable or unauthorized

trading, additional pleading requirements must be met.  A plaintiff alleging an unsuitability claim

under Section 10(b) must adequately plead the following five elements:

> (1) the securities purchased were not suited to the buyer's needs;
> (2) the defendant knew or reasonably believed the securities were
> not suited to the buyer's needs; (3) the defendant recommended or
> purchased the unsuitable securities for the buyer anyway; (4) the
> defendant made material misrepresentations with scienter (or,
> owing a duty to the buyer, failed to disclose material information);
> and (5) the buyer justifiably relied to his or her detriment on the
> defendant's fraudulent conduct.

Rowe v. Morgan Stanley Dean Witter, 191 F.R.D. 398, 410 (D.N.J. 1999).  It is also necessary to

show that the broker had control of an investor's account to establish an unsuitability claim.  See

Rivera v. Clark Melvin Sec. Corp., 59 F.Supp. 2d 280, 291 (D.P.R. 1999).  Because an

unsuitability claim is a subset of the ordinary Section 10(b) fraud claim, each of these elements

must be pled with particularity.  Id.

With respect to the claim for unauthorized trading, a plaintiff must provide

specific information regarding the alleged unauthorized trades made in the account (See Rowe,

191 F.R.D. at 413), supported by an accompanying misrepresentation, omission, or

nondisclosure, accompanied "by an intent to defraud or a willful and reckless disregard of the

client's best interests."  Rowe, 191 F.R.D. 414.  The fact that an unauthorized trade was made is

not actionable under Rule 10b(5) absent deception.  Manela v. Gorantia Banking, Ltd., 5 F.

Supp. 2d 165 (S.D.N.Y. 1998).

The Amended Complaint fails to meet the 10(b) pleading requirements on many levels.  First, Plaintiff has not sufficiently alleged that Defendants made a material misrepresentation or omission.  Instead, the Amended Complaint states in a conclusory fashion, that Defendants "concealed" and "failed to disclose…material facts about Travis's account."  Amended Complaint ¶¶ 29-30.  Plaintiff fails to allege how Defendants concealed or failed to disclose the supposedly unauthorized and unsuitable trades.  Nor does she allege what information was concealed.  The few facts that Plaintiff does allege directly contradict  her claim.  Plaintiff admits that Defendants sent monthly account statements directly to her home.  Those statements disclosed to Plaintiff the activity occurring in her accounts transaction by transaction.  The Amended Complaint does not suggest that Defendants failed to send account statements at any time or that any statement was altered or omitted relevant information.

Nor does Plaintiff plead with particularity that Defendants made any misrepresentations to her.  She alleges generally that her husband – to whom she had ceded control over her investments to allow him to impress her family - misled her through positive assurances.  In <u>Goodman</u>, the court examined the allegations of the Complaint to determine if they met the specificity requirements of Rule 9(b).  The plaintiff claimed with respect to her husband as follows:

> On those occasions where the plaintiff inquired of [her husband] as to how the account was doing, he told her that all was well and that the value of her investments was increasing.  Specifically, on numerous occasions he said that money would never be a problem and that they were building a very strong position.

<u>Goodman</u>, 698 F Supp. at 1084.  The court concluded that the complaint was not plead with specificity and this paragraph was "[t]he most egregious shortcoming of the complaint."  <u>Id.</u>

The allegations in the present matter are no different. Apart from the allegation that her husband offered her positive assurances, Plaintiff provides no further specificity in the Amended Complaint. She claims her husband made the unauthorized transactions but advises in her introductory paragraph that she is pleading "upon information and belief" with respect to all matters other than her own accounts. When doing so, the PSLRA requires that a plaintiff "state with particularity all facts on which that belief is formed." In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 147 (3d Cir. 2004) (quoting 15 U.S.C.§78u-4(b)). Plaintiff has not done so. Absolutely no information is provided about the nature of Plaintiff's husband's employment at Vanguard. To be sure, he's not listed as her registered representative on her monthly statements, nor would there be an assigned representative on her self-directed account. Plaintiff offers no facts which would tie her husband to her account at Vanguard or which would show Vanguard's knowledge of that connection. Plaintiff does not allege that her husband ever executed trades in her accounts from Vanguard's premises, using Vanguard property, or for Vanguard's benefit. She offers no facts whatsoever which would demonstrate that Vanguard cloaked her husband with the apparent authority to make trades in her account. There is nothing to suggest that Delaney was acting as a Vanguard employee, as opposed to acting as her husband whom she was allowing to prove himself to her and her father.

Plaintiff also fails to meet the high threshold for pleading scienter. To successfully plead scienter, the Plaintiff must allege that Defendants possessed the mental state to deceive. See In re Suprema, 428 F.3d at 276. A pleading of scienter "may not rest on a bare inference that a defendant must have had knowledge of the facts or must have known of the fraud" because "general imputations of knowledge do not suffice." Id. at 282. Once again, the requisite "who, what, when , where, and how" are conspicuously absent. Plaintiff apparently

cannot even plead that her husband acted with fraudulent intent.  She does not allege any factual basis, much less a "cogent" and "compelling" one, for the notion that her husband or Vanguard intended to deceive her.

The opposing inference one could draw from the facts stated in the Complaint is far more compelling than the inference of scienter as set forth by the Plaintiff.  Simply put, and as admitted by Plaintiff, she relied on her husband to control her finances and she did not read the statements Defendants sent to her.  She gave her husband control of the cash she had to invest so he could prove himself to her and her father.  This does not equate to the required intent attributable to Defendants to sustain a claim.  The more compelling inference is that Plaintiff relinquished control of her finances to her husband, was optimistic that he could "prove" himself, did not follow her investments in any way and lost a substantial amount of money because her husband's investment decisions did not work out.  There is a compelling inference that when marital difficulties arose, Plaintiff decided to look to someone other than her husband to reclaim some of the money that was lost.  In no way do the allegations pled in the Amended Complaint paint an inference of fraudulent intent that comes close to outweighing this far more reasonable inference.  The Amended Complaint is without any viable statement or inference of fraud.

The Amended Complaint also fails for lack of any credible allegation that Plaintiff justifiably relied on any stated misrepresentation or omission by Defendants.  Plaintiff vaguely stated in the original Complaint that she relied on Defendants' reputation that her assets would be "properly monitored and invested."  Original Complaint ¶ 11.  As noted in the original Motion to Dismiss, this falls woefully short of meeting the 10(b) particularity standard since, by definition, a company's reputation is not a statement made by the company, but "recognition by other people of some characteristic or ability."  Merriam-Webster Online, http://www.merriam-

webster.com/dictionary (last visited October 3, 2007).  Defendants' reputation is an opinion held

by others outside of the company and cannot possibly be a misrepresentation by Defendants. In

response, Plaintiff has now simply omitted this paragraph from her Amended Complaint.  This

leaves Plaintiff with no factual allegation at all related to the reliance element required to sustain

a fraud claim.

      With respect to the lack of suitability claim, the Amended Complaint fails to meet

the particularity standard of 10(b) for any of the elements necessary to a suitability claim.

Indeed, it essentially fails to plead these elements at all.  A blanket allegation that unsuitable

trades were made is not sufficient to pass the heightened pleading requirement of 10(b).

Importantly, Plaintiff fails to allege that Defendants had any knowledge of her investment

objectives.  Instead, she pleads in the Amended Complaint that she told her husband about her

investment objectives when she permitted him to open an account, which was before he was

employed by Vanguard.  Unless Vanguard is presumed to have notice of everything ever known

by every employee prior to being hired by Vanguard, this cannot satisfy the standards for a

suitability claim.

      Further, Plaintiff specifically states that her account was a non-discretionary

account.  Amended Complaint ¶ 31.  Plaintiff failed to allege that she placed any level of faith or

control in Vanguard or routinely followed Vanguard's advice.  Plaintiff instead alleges that she

let her husband control all financial matters and allowed him to control her investments to prove

himself.  It is therefore clear on the face of the Amended Complaint that Plaintiff's husband was

acting as her agent, not Vanguard's.  See Altschul v. Paine Webber, Jackson & Curtis Inc., 518

F.Sup. 591 (S.D. N.Y. 1981) (investor's broker son acting as father's agent, not the agent of his

employing brokerage firm, since father relied on son, not Paine Webber to manage his accounts).

**D.    PLAINTIFF HAS NOT STATED, AND CANNOT STATE, A COMMON LAW FRAUD CLAIM AGAINST DEFENDANTS.**

Plaintiff's Fifth Claim for Relief is based on an allegation of common law fraud. To state a claim for fraud, plaintiff must plead that: (1) the defendant made a misrepresentation to the plaintiffs; (2) which was fraudulent; (3) of a material fact; (4) on which defendant intended the plaintiffs to rely; (5) the plaintiff did justifiably rely; and (6) this was a substantial factor in bringing about the harm suffered.  See Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).

A plaintiff pleading common law fraud is subject to a heightened pleading standard. Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The Third Circuit has stated that "Rule 9(b) requires plaintiffs to plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).  Allegations of "date, place or time fulfill these functions" but nothing in the Rule requires them.  Id.  Instead, plaintiffs are free to use alternative means to add precision and substantiation to their allegations.  See id.

Similar to the claims brought pursuant to Section 10(b) of the Securities Exchange Act, Plaintiff's common law fraud claim is insufficiently pled.  Plaintiff does not plead with particularity what material misrepresentations or omissions were made by Vanguard or her husband acting in the capacity of a Vanguard employee.  Further, the Amended Complaint does not allege that Defendants intended that Plaintiff rely on, or that Plaintiff justifiably relied on, the alleged omissions and misrepresentations.  Before any defendant can be subjected to a fraud claim, the specifics of the alleged fraud need to be detailed.  The Amended Complaint does not

begin to do so.  Instead, it begins and ends with the rote recitation of the elements of a fraud

claim, leaving Defendants to guess as to the alleged factual basis.  Such conclusory and nebulous

allegations do not begin to rise to the level of particularly required by the Rules.

## CONCLUSION

        For all of the foregoing reasons, Defendants respectfully ask this Court to grant

their motion to dismiss based on Plaintiff's failure to state a claim upon which relief can be

granted.

                         Respectfully submitted,


                         "/s/" Paula D. Shaffner

                         Paula D. Shaffner
                         Attorney I.D. No. 43542
                         Jennifer Minuchi
                         Attorneys for Defendants
                         SAUL EWING LLP
                         Centre Square West
                         1500 Market Street, 38th Floor
                         Philadelphia, PA  19102-2186
                         (215) 972-7777

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendants' Motion to Dismiss and

Memorandum of Law in Support thereof was served this 5th day of November, 2007 via

electronic filing and/or First Class Mail, addressed as follows:

> Jeffrey B. Gittleman, Esquire
> Barrack, Rodos & Bacine
> 3300 Two Commerce Square
> 2001 Market Street
> Philadelphia, PA  19103

> "/s/" Paula D. Shaffner
> Paula D. Shaffner