IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TRAVIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 2:07-cv-03484-BWK |
| vs. | : | |
| | : | |
| THE VANGUARD GROUP, INC., and | : | |
| VANGUARD MARKETING CORPORATION, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |
| | : | ELECTRONICALLY FILED |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Joy Travis ("Travis") submits this memorandum of law in opposition to the

motion of defendants The Vanguard Group, Inc. ("Vanguard Group") and Vanguard Marketing

Corporation ("Vanguard Marketing") (together, "Vanguard" or "defendants") to dismiss the

Amended Complaint.

**<u>Introduction</u>**

In 2003, Travis received a distribution from a family trust.  (¶ 7.)[1]  This money

represented virtually all of her assets.  (¶ 12.)  Because she had absolutely no investment

experience and no knowledge about investments, she asked her then-husband, John Delaney

("Delaney"), who had been a stockbroker, to recommend investments that would provide her

with income, and preserve the amount invested.  (¶¶ 6, 9-10.)  Delaney recommended that Travis

invest her distribution in a balanced portfolio of mutual funds at Vanguard, which she did.

(¶ 10.)  Shortly thereafter, Delaney became employed by Vanguard and, without Travis's

---

[1] As set forth herein, "(¶)" refers to paragraphs of Plaintiff's Amended Complaint.

knowledge or consent, systematically liquidated Travis's portfolio of mutual funds, using the proceeds to day-trade high-risk options in her accounts. (¶¶ 13, 15-16.) In total, Delaney made over **450** unauthorized trades in Travis's accounts during the course and within the scope of his employment at Vanguard. (¶¶ 16, 19.)[2]

Delaney's pattern of day-trading options in Travis's accounts should have raised multiple red flags at Vanguard, especially considering that he was conducting transactions in his wife's individual (and not joint) account. (¶¶ 10, 18, 20.) But Defendants either lacked a functioning system of controls to prevent Delaney from engaging in this unauthorized trading or simply ignored that he was making hundreds of trades in Travis's account without her authorization. (¶¶ 20-21.)

Never once did Vanguard bother to contact Travis to determine whether the excessive trading was authorized. To the extent that Vanguard sent Travis account statements, these statements were intercepted by Delaney. (¶ 22.) And, when Travis inquired about the status of her investments, Delaney, Vanguard's employee, falsely informed Travis that her investments were performing well. (¶ 23.) Travis simply had no reason to suspect that anything was wrong with her investments.

By December 2005, Travis had become concerned about her relationship with Delaney. (¶ 24.) As a result, and despite Delaney's continuing assurances that her investments were satisfactory and doing well, Travis opened her Vanguard account statement covering the prior month. *Id.* Travis was shocked to find that her total investment balance had fallen from $600,000 to under $2,000. *Id.* This was the first time that Travis had any idea that anything was amiss with her investments, since it was the defendants, through Delaney, who had assured

---

[2] Delaney was an employee of the Vanguard Group and a registered representative of Vanguard Marketing. (¶ 13.)

Travis that her investments were doing well. *Id.* Only after further investigation did Travis discover the true breadth and scope of defendants' unauthorized and unsuitable trading. *Id.*

In their motion to dismiss, defendants do not dispute that the transactions at issue were unauthorized and not suited to Travis's investment objectives. Instead, defendants seek to escape liability for their outrageous conduct primarily by arguing that Travis's claims are time-barred. Vanguard's argument, however, ignores the facts as pleaded in the Amended Complaint which, on its face, demonstrates that Travis's claims are timely. As detailed below, Travis specifically alleges that she did not discover that anything was amiss with her investments until December 2005. Thus, the earliest date on which Travis could have been placed on inquiry notice of her claims is December 2005. Because Travis filed this action within two years of that date, her claims are timely and defendants' motion to dismiss should be denied.

Defendants' motion should also be denied as the Amended Complaint more than adequately states a claim for unauthorized trading, unsuitability and common law fraud. Travis has sufficiently alleged each of the requisite elements of her claims for securities fraud and common law fraud. The Amended Complaint provides specific information about each of the over 450 unauthorized and unsuitable trades made by defendants, alleges that defendants never disclosed the trades or the risks associated with these trades to Travis, pleads that the trades were accompanied by an intent to defraud or a willful and reckless disregard of Travis's best interests and alleges the element of reliance. Therefore, defendants' motion to dismiss for failure to state a claim should be denied.

## Argument

### A.      Legal Standards Applicable to Vanguard's Motion to Dismiss

A motion to dismiss brought pursuant to Fed.R.Civ.P 12(b)(6) "may be granted only if,

accepting all well-pleaded allegations in the complaint as true, and viewing them in the light

most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec.*

*Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citation omitted).  The issue is not whether the

plaintiff will ultimately prevail, but whether the plaintiff should be permitted to proceed further

to establish the facts alleged in the complaint.  *Id.*  In a Rule 12(b)(6) motion, the defendants bear

the burden of persuading the Court that no claim has been stated.  *Gould Elecs., Inc. v. United*

*States*, 220 F.3d 169, 178 (3d Cir. 2000).

### B.      Travis's Claims Are Timely and Not Barred
### by the Applicable Statutes of Limitations

In her Amended Complaint, Travis asserts eight separate claims for relief based upon

Vanguard's unauthorized and unsuitable trading: (1) unauthorized trading in violation of Section

10(b) of the Securities Exchange Act of 1934 (the "Securities Exchange Act"); (2) unsuitable

trading in violation of Section 10(b) of the Securities Exchange Act; (3) violation of Section

20(a) of the Securities Exchange Act; (4) breach of fiduciary duty; (5) common law fraud; (6)

negligence; (7) negligent supervision; and (8) conversion. (¶¶ 26-86.)  Because each of these

claims was brought within the applicable statutes of limitations period, Vanguard's motion to

dismiss Travis's claims as untimely should be denied.

### 1.      Travis's Securities Exchange Act Claims Are Timely

The Sarbanes-Oxley Act of 2002 provides that when an action involves a claim of "fraud,

deceit, manipulation or contrivance in contravention of a regulatory requirement concerning the

securities laws" an action may be brought "not later than the earlier of (1) two years after the

discovery of the facts constituting the violation; or (2) five years after such violation." 28 U.S.C.

§ 1658(b).  Courts in the Third Circuit use an inquiry notice standard to determine when the

statute of limitations begins to run in securities fraud cases.  *In re NAHC, Inc. Sec. Litig.*, 306

F.3d 1314, 1325 (3d Cir. 2002).  Revelations that trigger inquiry notice are often referred to as

"storm warnings."  A plaintiff in a securities fraud action is put on inquiry notice when:

> a reasonable investor of ordinary intelligence would have discovered the information and
> recognized it as a storm warning.  Whether the plaintiffs, in the exercise of reasonable
> diligence, should have known of the basis of their claims depends on whether they had
> sufficient information of possible wrongdoing to place them on inquiry notice or to excite
> storm warnings of culpable activity.  The test for storm warnings is an objective one….

*Gargiulo v. DeMartino*, 2007 U.S. Dist. LEXIS 71316 at *27 (E.D.Pa. September 26, 2007)

(citations and quotations omitted).  "The facts constituting inquiry notice must be sufficiently

probative of fraud – sufficiently advanced beyond the stage of mere suspicion, sufficiently

confirmed or substantiated – not only to incite the victim to investigate but also to enable hi[m]

to tie up any loose ends and complete the investigation in time to file a timely suit."  *In re*

*MobileMedia Sec. Litig.*, 28 F.Supp. 2d 901, 941 (D.N.J. 1998) (*quoting Fujisawa Pharm. Co. v.*

*Kapoor*, 115 F.3d 1332, 1333 (7th Cir. 1997)).

Here, the earliest that Travis could have been on inquiry notice of her claims is December

2005, when she first learned that something was amiss with her Vanguard investments.  (¶ 24.)

Because Travis filed her initial complaint in August 2007, within two years of that discovery,

Travis's claims are timely and, therefore, defendants' motion to dismiss should be denied.

### a.   The Issue of When Travis Was on Inquiry Notice of Her Securities Exchange Act Claims Is a Question of Fact Not Properly Determined on a Motion to Dismiss

At the motion to dismiss stage of litigation, "defendants bear a heavy burden of

demonstrating that as a matter of law the plaintiff had inquiry notice of the alleged violation prior

to the plaintiff filing the complaint." *Gargiulo*, 2007 U.S. Dist. LEXIS 71316 at *27 (quotation omitted). "Unless the complaint, on its face, fails to comply with the applicable limitations period, a motion to dismiss based on the failure to comply with the statute of limitations should be denied." *In re DaimlerChrysler Sec. Lit.*, 197 F.Supp.2d 42, 57 (D.Del. 2002) (citation omitted). The "question of whether a plaintiff had inquiry notice such that his or her complaint is barred by the statute of limitations is a fact-intensive question making it inappropriate for resolution on a motion to dismiss, unless the underlying facts are undisputed." *Id.* (citations omitted); s*ee also In re Lucent Technologies, Inc. Sec. Litig.*, 217 F.Supp. 2d 529, 542 (D.N.J. 2002) ("Put another way, whether a plaintiff had sufficient facts to place him on inquiry notice of a claim for securities fraud under S.E.C. Rule 10b-5 is a question of fact, and [as] such is often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6).") (citations omitted); *In re MobileMedia Sec. Litig.*, 28 F.Supp.2d at 941 (dismissal based upon the running of the statute of limitations is often inappropriate on Rule 12(b)(6) motion).

From the face of the Amended Complaint, it is not possible to conclude that Travis's Securities Exchange Act claims are time-barred. Travis alleges that she did not learn that anything was wrong with her investments until December 2005. (¶24.) That was the first time that Travis discovered facts that led her to uncover the unauthorized and unsuitable trading. (¶ 24.) Before December 2005, Delaney, Travis's husband and a registered representative with Vanguard, had assured Travis that her investments were doing well. (¶ 23). Given these positive (but false) assurances, there was simply no reason for Travis to have suspected Vanguard's fraudulent conduct.

Vanguard asks the Court to ignore the facts alleged in the Amended Complaint, however, and contends that Travis was on inquiry notice of her Securities Exchange Act claims in early

2004. Vanguard argues that Travis has been on notice of defendants' fraudulent conduct since defendants mailed Travis her Vanguard account statement dated January 31, 2004. Vanguard contends that this account statement, as well as other statements thereafter sent by defendants, contained information that should have alerted Travis to defendants' unauthorized and unsuitable trading.

The question of when Travis was on inquiry notice of her Securities Exchange Act claims against Vanguard is a fact-intensive inquiry that is best resolved by the trier of fact. To resolve this issue, the trier of fact will need to determine, among other things: (1) whether Travis had access to her account statements; (2) whether the contents of the account statements, if provided to Travis, would have alerted her to the fraud; and (3) whether defendants, through their employee Delaney, concealed the true state of Travis's investments by providing her with false assurances about the status of her investments. Such factual findings are not properly decided on a motion to dismiss. *See In re Lucent Technologies, Inc. Sec. Litig.*, 217 F.Supp. 2d at 542.

> **b.      Defendants Have Failed to Meet Their Heavy Burden of Demonstrating That Travis Was on Inquiry Notice of Her Claims in Early 2004 As a Matter of Law**

Vanguard has a "heavy burden" of demonstrating that Travis was on inquiry notice of her claims in early 2004. *Gargiulo*, 2007 U.S. Dist. LEXIS 71316 at *27. Vanguard attempts to meet this burden by arguing that account statements sent to Travis in early 2004 placed her on inquiry notice of her Securities Exchange Act claims *as a matter of law*. Vanguard is wrong.

As demonstrated above, the mere fact that Vanguard sent Travis monthly account statements does not establish that Travis was on inquiry notice of her securities fraud claims in early 2004. *See National Rural Electric Cooperative Assoc. v. Breen Capital Services Corp.*, 2001 U.S. Dist. LEXIS 9284 *15. (D.N.J. March 28, 2001) (rejecting defendants' contention that

trading records and account statements received by the plaintiff put it on inquiry notice of its securities fraud claim.); *Lebow v. Merrill Lynch, Pierce, Fenner & Smith*, 1987 U.S. Dist. Lexis 1859, *7 (N.D.Ill. March 12, 1987) (denying motion to dismiss claim as time-barred, despite the fact that plaintiff received account statements).  In determining when a plaintiff is on inquiry notice of her claims, courts examine the totality of the circumstances, emphasizing different facts in different cases.

Of particular importance in this case is the husband-wife relationship between Delaney and Travis and Delaney's employment with Vanguard.  Travis relied on Delaney to keep her informed about the status of her investments.  (¶ 22.)  This is not surprising in view of Delaney's position as a registered representative of Vanguard.  (¶ 13.)  Thus, when Vanguard, through Delaney, falsely assured Travis that her investments were performing well, there was no reason for Travis to doubt these assurances.  *See Komanoff v. Mabon, Nugent & Co.*, 884 F.Supp. 848, 854-56 (S.D.N.Y. 1995) (in rejecting defendants' argument that monthly statements sent to plaintiff should have alerted plaintiff to her excessive trading claims as a matter of law, the court emphasized the relationship between plaintiff and broker stating: "That [plaintiff] placed extra trust in [her broker] because she was her daughter makes it more reasonable, we believe, for [plaintiff] to have failed to discern the alleged wrongdoing by the defendants.")

The unique facts of this case distinguish it from the cases Vanguard cites.  In *Appel v. Kidder, Peabody & Co., Inc.*, 628 F.Supp. 153, 157-158 (S.D.N.Y. 1986), plaintiff was a trustee who did not review monthly statements from the trust's asset manager.  Here, however, Travis (who is not a trustee) did not ignore her account statements.  Instead, she relied on her then-husband, who was Vanguard's agent and employee, to open the account statements and keep her informed about the status of her investments with Vanguard.  (¶ 22.)  Because Delaney falsely

assured Travis that her investments were doing well and everything was satisfactory, Travis had no reason to make further inquiries.

In *Rodriguez Canet v. Morgan Stanley & Co.*, 419 F.Supp.2d 90, 95-96 (D.P.R. 2006), the plaintiff failed to examine the status of her account for over 15 years. Unlike the plaintiff in that case, here, Travis did not "sit back and hope for the best"; rather, she periodically discussed the status of her investments with Delaney, Vanguard's agent and employee, thereby taking affirmative steps to periodically ascertain the status of her accounts.[3] (¶ 23.)

In arguing that the account statements put Travis on inquiry notice in early 2004, Vanguard attempts to discount the relevance of Delaney's positive assurances. Because the facts of this case are so different, the cases cited by Vanguard are inapposite. For example, in *Goodman v. Shearson Lehman Bros.*, 698 F.Supp. 1078 (S.D.N.Y. 1998), the court rejected plaintiff's contention that the statute of limitations was tolled because plaintiff's husband assured her that her accounts were being successfully managed. Significantly, unlike here, there, plaintiff had given her husband authorization over the accounts. And her husband was not employed by the brokerage firm. Here, Delaney was a Vanguard employee and defendants' registered representative. In *Ocrant v. Dean Witter Company*, 502 F.2d 854 (10th Cir. 1974), plaintiff relied on her husband to supervise her accounts. But while plaintiff's husband was a broker, he did not work at the brokerage firm where plaintiff had her accounts. Moreover, unlike

---

[3] The remaining cases cited by Vanguard in this vein are also distinguishable. *Koke v. Stifel, Nicholaus & Co., Inc.*, 620 F.2d 1340, 1341 (8th Cir. 1980), and *Kosovich v. Thomas James Assocs., Inc.*, 1995 WL 135582 *2 (S.D.N.Y. March 29, 1995), were decided on summary judgment where the courts had before them a substantial amount of discovery. In *Salzmann v Prudential Securities, Inc.*, 1994 WL 191855 *6 (S.D.N.Y. May 16, 1994), and *Holtzman v. Proctor, Cook & Co., Inc.*, 528 F. Supp. 9, 14 (D.Mass. 1981), plaintiffs were aware that their investments were losing money. Here, because of Delaney's false assurances, Travis had no knowledge that her investments were losing money until December 2005. In *Lenz v. Associated Inns and Restaurant Co. of Amer.*, 833 F.Supp. 362, 375-377 (S.D.N.Y. 1993), again a case decided on summary judgment, the court took into account that Lenz was an increasingly sophisticated investor during the relevant time period. By contrast, Travis was a novice and inexperienced investor at all times. Finally, unlike this action, in *Norniella v. Kidder Peabody & Co., Inc.*, 752 F.Supp. 624 (S.D.N.Y. 1990), there was no familial relationship between plaintiffs and their broker.

the instant case, in *Ocrant* there was no allegation that plaintiff's husband provided her with any positive assurances about the status of her investments.[4]

In sum, the earliest any "storm warnings" of fraud appeared was December 2005. At that point, Travis exercised reasonable diligence to discover the decline in her account balances, identified Vanguard's fraudulent conduct and, thereafter, timely filed this action. Since Travis was not on inquiry notice of her claims until, at the earliest, December 2005, the Court should deny Vanguard's motion to dismiss.

**2.      Travis's Pennsylvania Common Law Claims Are Timely**

Travis's claims for breach of fiduciary duty, common law fraud, negligence, negligent supervision and conversion are governed by Pennsylvania's two year statute of limitations. 42 Pa. Cons. Stat. § 5524. In Pennsylvania, limitations periods are computed from the time the cause of action accrues. Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises, which generally is when the injury was inflicted. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citations omitted). There are exceptions, however, that act to toll the statute of limitations. The discovery rule is one such exception. *Id.* at 858.

The purpose of the discovery rule is to "exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury." *Id.* As the discovery rule has developed, the key point that gives rise to its application is "the inability of the injured, despite

---

[4] *Citigroup Global Mkts., Inc. v. Bacon*, 2007 U.S. Dist. LEXIS 56779 (S.D. Tex. Aug. 2, 2007), is also inapposite. In that case, plaintiff sued her bank for allowing her husband to withdraw funds from her account without her authorization. Notably, plaintiff's husband did not work at the bank and plaintiff was not damaged by the unauthorized withdrawals. In vacating the arbitration award, the court concluded that, under those facts, the defendant could not be responsible for the actions of plaintiff's husband. *Id.* at 6-7. Here, Delaney worked for Vanguard and committed the fraud during the course and within the scope of his employment. Therefore, because Delaney was Vanguard's agent and employee, Vanguard can be and is responsible for Delaney's actions.

the exercise of reasonable diligence, to know that he is injured and by what cause." *Id.* (citation omitted). Reasonable diligence is not an absolute standard. As the Pennsylvania Supreme Court explained: "There are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." *Id.* (quotations omitted). When the discovery rule applies, the statute of limitations does not commence to run until the injured party discovers or reasonably should discover that she has been injured and that the injury has been caused by another person's conduct. *Id.* at 859 (citation omitted).

Significantly, the applicability of the discovery rule involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of her injury and its cause. Because this question involves a factual determination, ordinarily, it is an issue for the jury to decide. Thus, the question as to when a party's injury and its cause were discovered or discoverable is for the jury. *Id.* at 858, 859 (citations omitted). As demonstrated above, there is clearly a factual dispute about when Travis should have discovered Vanguard's unauthorized and unsuitable trading. Accordingly, this is an issue best left for the jury to decide and not appropriate for resolution on a motion to dismiss.

In any event, the discovery rule is applicable in this case. It was not until December 2005 that Travis first learned of facts that led her to eventually uncover Vanguard's fraudulent conduct. (¶24.) Prior to that time, despite her diligence in following the status of her investments, there was nothing to "awaken her inquiry." Delaney provided Travis with updates about her investments, informing Travis that everything was satisfactory. (¶23.) Only when Travis became concerned about her relationship with Delaney did she have reason to examine her account statements. (¶ 24). And, it was only at that point, in December 2005, that she

learned that Delaney had lied to her and that Vanguard had taken advantage of her. *Id.*

Therefore, since Travis filed her initial complaint in August 2007, defendants' motion to dismiss

Travis's state law claims based on the statute of limitations should be denied.

**C.    The Amended Complaint States a Claim Under**
**Section 10(b) of the Securities Exchange Act and Rule 10b-5**

###    1.    Travis Has Adequately Alleged a Claim of Unauthorized Trading

Travis alleges that Vanguard engaged in unauthorized trading in violation of Section

10(b) of the Securities Exchange Act and Rule 10b-5.  To state a claim for unauthorized trading,

a plaintiff must (a) provide specific information regarding the unauthorized trades made in the

account; (b) plead an accompanying actionable misrepresentation, omission or nondisclosure;

and (c) plead that the trades were "accompanied by an intent to defraud or a willful and reckless

disregard of the client's best interests."  *Rivera v. Clark Melvin Securities Corp.*, 59 F.Supp. 2d.

280, 292-3 (D.P.R. 1999) (*quoting Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 679 (11th Cir.

1988)).  Each of these elements has been well pleaded in the Amended Complaint.

First, the Amended Complaint provides specific information about the 450 unauthorized

trades made by defendants.  Each of the trades that Travis challenges is detailed in Exhibit A to

the Amended Complaint.  The trades are identified by listing the trade date, the type of

transaction (purchase or sale), a description of the security (for options this includes the

expiration date) and the quantity of the security purchased or sold.  This level of particularized

pleading is sufficient to satisfy the first element of a claim for unauthorized trading.

Second, Travis identified actionable omissions that accompanied the unauthorized trades.

Travis alleges that each of the 450 challenged transactions was made without her authority,

knowledge or consent.  In particular, Travis alleges that neither Delaney nor Vanguard disclosed

the trades to her. (¶ 33.)  "A broker's failure to inform an investor of trading made on his or her

account is itself a material omission and, in fact, no omission could be more material than that."

*Id.* at 292; s*ee also Hometown Savings & Loan Assoc. v. Moseley Securities Corp.*, 703 F.Supp.

723, 724 (N.D. Ill. 1988) ("the relevant omission alleged is the failure to inform the investor that

defendant was making purchases and sales.  No omission could be more material than that.")

Third, Travis has adequately pleaded that the unauthorized trades were accompanied by

an intent to defraud or a willful and reckless disregard of Travis's best interests.  Travis has

alleged that Vanguard, through Delaney, had actual knowledge that Travis did not authorize the

challenged transactions.  (¶ 34.)  She further alleges that Delaney's pattern of day-trading options

should have raised multiple red flags at Vanguard, yet Vanguard failed to take any steps to

determine whether the extensive and risky trading was authorized or suitable.  (¶¶ 20, 35.)

Travis also alleges that Vanguard either lacked a functioning system of controls to prevent

Delaney from engaging in this unauthorized and unsuitable trading or simply ignored the fact

that he was conducting hundreds of trades without her knowledge and authority.  (¶ 21.)  In

addition, Travis alleges that when she asked Delaney about the status of her investments,

Delaney falsely told Travis that everything was satisfactory.  (¶¶ 23, 33.)  Finally, Travis alleges

that Vanguard participated in this scheme to defraud Travis for the purpose of generating fees

and commissions from the day-trading of options, which fees would be far more than could be

earned by leaving Travis's investments in the mutual funds that she had originally approved.

(¶ 25.)  Taken together, these facts establish that Vanguard knew that the trades were

unauthorized or, at the very least, acted in reckless disregard of whether they were.  *See Rivera*,

59 F.Supp.2d at 292-293 (allegation that defendants engaged in unauthorized trades that were

both excessive and unsuitable, along with allegation that they took advantage of plaintiff's age

and declining health sufficient to plead that defendants had intent to defraud or acted recklessly).

Defendants attempt to skirt liability for their unauthorized trading by washing their hands of Delaney. Vanguard contends that it should not be responsible for Delaney's unauthorized trading because "there is nothing to suggest that Delaney was acting as a Vanguard employee…" Def. Mem. at 23. This argument again ignores the facts as pleaded. The Amended Complaint specifically alleges that each of the unauthorized and unsuitable transactions was made by Delaney during the course and within the scope of his employment at Vanguard. (¶ 19.) These allegations are sufficient to hold defendants liable for the acts of Delaney, their agent, employee and registered representative. *Rivera*, 59 F.Supp. at 296 (court denied motion to dismiss, finding that plaintiffs pleaded sufficient facts alleging respondeat superior liability so as to hold broker-dealer liable for acts of its agents where complaint alleged brokers were employees of and acting on behalf of broker-dealer while engaging in unauthorized and unsuitable trades); s*ee also Jairett v. First Montauk Securities Corp.*, 153 F.Supp. 2d 562, 572-573 (E.D.Pa. 2001) (broker-dealer may be held liable for acts of its registered agent under Section 10(b) of the Securities Exchange Act); *Wildermuth v. Becker*, 1989 U.S. Dist. Lexis 4817, *13-14 (E.D. Pa. May 1, 1989) (brokerage firm was vicariously liable for broker's unauthorized trading in plaintiffs' account).

Relying on *Tellabs v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007), Vanguard also contends that Travis has not adequately pleaded the element of scienter. In particular, Vanguard asserts that the allegations of the Amended Complaint do not show a strong inference of scienter, and that the more compelling inference from these facts is that Travis relinquished control of her finances to Delaney, Delaney lost a substantial amount of money, and now Travis is looking to someone other than her husband to recoup some of the money that was lost. Def. Mem. at 24. Vanguard is mistaken.

In *Tellabs*, the Supreme Court cautioned that a "court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically," and determine whether the allegations "accepted as true and taken collectively, would [allow] a reasonable person [to] deem the inference of scienter at least as strong as any opposing inference." 127 S.Ct. at 2511. Here, Travis specifically alleges that at no time did she give Delaney or Vanguard the authority to day-trade options on her behalf. (¶¶ 11, 32.) Vanguard's theory that Travis relinquished control of her investments and somehow authorized Delaney to day-trade in options is nothing more than an unsupported assumption that is directly contradicted by Travis's allegations. Vanguard's theory is simply not *stronger* than the inference of scienter as alleged in the Amended Complaint. Further, this is not an open market fraud where the non-disclosure of material facts is not itself indicative of scienter. Here, the relationship was direct, face-to-face; in this context, the non-disclosure of the 450 unauthorized and high-risk trades inherently involves intentional or reckless conduct.

### 2.    Travis Has Adequately Alleged a Claim of Unsuitable Trading

Travis also alleges that Vanguard engaged in unsuitable trading in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5. Unsuitability is a subset of the ordinary Section 10(b) fraud claim. *Louros v. Kreicase*, 367 F.Supp.2d 572, 585 (S.D.N.Y. 2005) (*citing Brown v. E.F. Hutton*, 991 F.2d 1020, 1031 (2d Cir. 1993)). To state a claim for unsuitable trading, a plaintiff must plead that: (a) the securities purchased were not suited to the buyer's needs; (b) the defendant knew or reasonably believed the securities were not suited to the buyer's needs; (c) the defendant recommended or purchased the unsuitable securities for the buyer anyway; (d) the defendant made material misrepresentations with scienter (or, owing a duty to the buyer, failed to disclose material information) relating to the suitability of the securities; and

(e) the buyer justifiably relied to his detriment on the defendant's fraudulent conduct. *Rowe v. Morgan Stanley Dean Witter*, 191 F.R.D. 398, 410 (D.N.J. 1999). In addition, the plaintiff must plead loss causation. *Louros*, 367 F.Supp. 2d at 592, fn. 145. Moreover, some courts also require that the plaintiff allege that defendant exercised control over the investor's account. *See Rivera*, 59 F.Supp. 2d at 291 (citations omitted). Again, each of these elements has been well pleaded in the Amended Complaint.

Travis's investment objectives were conservative; she wanted her investments to provide income without sacrificing principal. (¶ 12.) Vanguard disregarded Travis's investment goals, however, and permitted Delaney to day-trade options in Travis's accounts. The purchase and sale of hundreds of high-risk option contracts was certainly not suited to Travis's investment needs. *See The Pits, Ltd. v. American Express Bank International.*, 911 F.Supp. 710, 718 (S.D.N.Y. 1996) (specific itemized examples of options trading, incompatible with plaintiff's investment objectives, sufficient to sustain unsuitability claim under Section 10(b)); *Lourous*, 367 F.Supp. 2d at 586 (trier of fact could reasonably conclude that "June Spreads" were unsuited to investor's growth objective).

Defendants knew that the purchase and sale of high-risk options was not suited to Travis's investment needs. (¶ 46.) Travis specifically told Delaney of her conservative investment objectives. (¶ 12.) Remarkably, Vanguard argues that because Travis provided this information to Delaney prior to his employment with Vanguard, such knowledge cannot be imputed to defendants. This argument ignores reality. Did Delaney suddenly forget Travis's investment objectives once he became employed by Vanguard? Did Vanguard not have a duty to ascertain these objectives and assure that the investments made were consistent with those objectives? *See, e.g., NASD Manual*, Rule 2310.

Even if Delaney's knowledge on this point cannot be imputed to Vanguard -- which it can -- defendants should have reasonably believed that the day-trading of options was not suited to Travis's investment needs  For example, a simple review of Travis's account files should have shown that (1) Travis had no experience purchasing stock or bonds; (2) Travis had never purchased options before; (3) the assets in Travis's accounts represented the bulk of her total assets; (4) Travis had conservative investment objectives; and (5) day-trading options is out of character for a novice investor.  Vanguard, though, either chose not to examine its files, did not have the proper documentation in its files, or merely ignored them.  The bottom line is that Vanguard, through Delaney, purchased and sold high-risk options on Travis's behalf despite the fact that defendants knew that such investments were not suited to her investment needs.

In the context of an unsuitability claim, "scienter may be inferred by finding that the defendant knew or reasonably believed that the securities were unsuited to the investor's needs, misrepresented or failed to disclose the unsuitability of the securities, and proceeded to recommend or purchase the securities anyway." *Louros*, 367 F.Supp.2d at 589 (*citing Brown v. E.F.* Hutton, 991 F.2d 1020, 1031 (2d Cir. 1993)); *Rivera*, 59 F.Supp. 2d at 292 (citations omitted).  "In other words, the satisfaction of certain other elements of the unsuitability claim – namely, that the defendant knew that the securities were unsuitable, purchased or recommended them anyway, and made misrepresentations relating to suitability – allows an inference that the misrepresentations relating to suitability were made with scienter." *Louros*, 367 F.Supp.2d. at 589.

As demonstrated above, Travis has adequately pleaded that defendants knew that options were an unsuitable investment for Travis but nonetheless purchased and sold hundreds of option contracts on her behalf.  The Amended Complaint alleges that defendants failed to disclose to

Travis that the day-trading of options was not suited to her investment needs or that this strategy was contrary to her investment objectives. (¶¶ 47-48). Travis further alleges that Vanguard never disclosed to her the risks associated with the day-trading options. (¶ 48.) Taken together, these allegations allow a strong inference that defendants acted with scienter in failing to inform Travis of the unsuitable trading on her behalf.

Turning to the element of reliance, the Supreme Court has stated that in cases involving omissions of fact, reliance can be presumed. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972). "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of his decision." *Id.* at 153-54. Thus, here, where the omitted facts regarding the unsuitability of the investments are material, reliance should be presumed. *Louros*, 367 F.Supp. at 592 (reliance presumed to be satisfied where claim rested on omission of material fact).

But even if reliance is not presumed, Travis more than adequately alleges the element of reliance. In the Amended Complaint, Travis specifically alleges that she relied upon Delaney, Vanguard's agent and employee, to provide her with truthful information and full disclosure about her investments. (¶¶ 37, 49.) Similarly, Travis alleges that she relied upon defendants to properly manage and supervise their agents and employees, including Delaney, to ensure that her investments were properly monitored. *Id.*

Finally, the Amended Complaint pleads that Vanguard exercised control over Travis's investments. As set forth in the Amended Complaint, even though Travis's account was non-discretionary, Vanguard, through Delaney, made over 450 high-risk transactions without Travis's authority, knowledge or control. Therefore, Vanguard assumed *de facto* control of Travis's investments. *Rivera*, 59 F.Supp. 2d at 290 (defendants exercised control over investors'

account where it engaged in excessive trading without informing plaintiff or seeking their

approval).[5]

For the above reasons, Travis has stated a claim for unsuitability under Section 10(b) of

the Securities and Exchange Act and Rule 10b-5.[6]

**D.     The Amended Complaint States a Claim for Common Law Fraud**

Fraud consists of "anything calculated to deceive, whether by single act or combination,

or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or

innuendo, by speech or silence, word of mouth, or look or gesture." *Martin v. Hale Products,*

*Inc.*, 699 A.2d 1283, 1287-88 (Pa. Super. 1997) (*quoting Moser v. DeSetta*, 589 A.2d 679, 682

(Pa. 1991)).  To state a claim for fraud in Pennsylvania, a plaintiff must plead the following

elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely,

with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of

misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the

resulting injury was proximately caused by the reliance." *Id.* at 1288 (*quoting Gibbs v. Ernst,*

---

[5] Citing *Altschul v. Paine Webber, Jackson & Curtis, Inc.*, 518 F.Supp. 591 (S.D.N.Y. 1981), Vanguard contends
that defendants did not exercise control over Travis's accounts because Delaney was acting as the agent of Travis
and not Vanguard.  In *Altschul*, the court granted Paine Webber's motion for summary judgment as to plaintiffs'
unsuitability and churning claims because the plaintiff was a sophisticated investor and had full knowledge of the
speculative nature of the investments.  In reaching this conclusion, the court relied on its finding that plaintiffs'
broker was the agent of plaintiffs (he was their son) and not the agent of the brokerage firm.  This decision was
dictated by the fact that plaintiffs had executed a written authorization for the broker to act on their behalf.  *Id.* at
592-595.  Here, the facts are the direct opposite: (1) Travis is an unsophisticated investor; (2) she had no knowledge
that Delaney was liquidating her mutual funds and day-trading options; and (3) she never gave Delaney permission
to engage in any trading, let alone the day-trading of options.

[6] Although not challenged by Vanguard, Travis notes that she has also adequately pleaded the element of loss
causation.  The essence of Travis's unsuitability claim is that Vanguard purchased unsuitable options while
concealing information relating to the securities' suitability.  Loss causation is satisfied "if the risk or other attributes
that rendered the investments unsuitable in the first place materialized to the plaintiff's detriment." *Louros*, 367
F.Supp. 2d at 593.  Here, the risk that materialized, *i.e.*, the dramatic loss of Travis's funds due to the high-risk
nature of day-trading options, was precisely the risk that was concealed from Travis.

647 A.2d 882, 889 (Pa. 1994)).  The "concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement."  *Id.*

The elements required to be pleaded for a common law fraud claim overlap those elements Travis was required to plead for her Section 10(b) claims.  For the reasons set forth in the discussion above, Travis has adequately pleaded these elements with particularity.  Therefore, Vanguard's motion to dismiss Travis's claim for common law fraud should be denied.

**Conclusion**

The Amended Complaint more than adequately pleads claims for securities fraud and common law fraud based upon defendants' unauthorized and unsuitable trading.  Each of the claims is timely and not barred by the applicable statutes of limitations.  Therefore, for the reasons set forth above, Travis respectfully requests that this Court deny Vanguard's motion to dismiss the Amended Complaint.

Dated: November 30, 2007                     _____/s/_____
                                             Daniel E. Bacine
                                             Jeffrey B. Gittleman
                                             BARRACK, RODOS & BACINE
                                             3300 Two Commerce Square
                                             2001 Market Street
                                             Philadelphia, PA  19103
                                             (215) 963-0600

                                             Attorneys for Plaintiff Joy Travis

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss was served this 30th day of November, 2007 via electronic court filing and electronic mail, addressed as follows:

Paula D. Shaffner, Esquire
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102-2186


_____/s/_____
Jeffrey B. Gittleman

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOY TRAVIS, | : |
| Plaintiff, | : |
| | : |
| | : Civil Action No. 2:07-cv-03484-BWK |
| vs. | : |
| | : |
| THE VANGUARD GROUP, INC., and | : |
| VANGUARD MARKETING CORPORATION, | : JURY TRIAL DEMANDED |
| | : |
| Defendants. | : |
| | : ELECTRONICALLY FILED |

**[PROPOSED] ORDER DENYING DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

Upon consideration of the motion filed by Defendants The Vanguard Group, Inc. and

Vanguard Marketing Corporation to dismiss the Amended Complaint, the Plaintiff's response

thereto, and other good cause shown,

**IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss the Amended

Complaint is **DENIED**.

**SO ORDERED.**

DATED: _____, 2007      _____
                                          BRUCE W. KAUFFMAN
                                          UNITED STATES DISTRICT JUDGE