IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TRAVIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 2:07-cv-03484-BWK |
| | : | |
| THE VANGUARD GROUP, INC., and | : | |
| VANGUARD MARKETING | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM OF LAW
OPPOSING DEFENDANTS' MOTION TO DISMISS**

**I.   INTRODUCTION**

Defendants The Vanguard Group, Inc. and Vanguard Marketing Corporation (collectively, "Vanguard" or "Defendants") submit this Memorandum of Law in further support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint and in reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss. As set forth at length in the Motion to Dismiss, Plaintiff's claims are filed well outside any applicable statute of limitation. In addition, Plaintiff has failed to state her alleged fraud claim with the requisite degree of particularity.

In response, Plaintiff advances two principal arguments in an effort to avoid dismissal of her claims. First, she argues that she was not aware of her husband's alleged fraud until she opened an account statement in December 2005. Plaintiff takes the position that since her husband handled their finances and told her all was well, the December 2005 date should govern the statute of limitation analysis. Second, she argues that her husband acted in the course and

1038014.1 12/14/07

1

scope of his employment at Vanguard and that allegation is sufficient to avoid dismissal of her claims. Neither argument is persuasive.

Plaintiff's first argument fails since it improperly equates her subjective actual knowledge with inquiry notice. The logical conclusion of Plaintiff's position is that any investor may turn their affairs over to another, neglect to review information sent to them about their investments and thereby toll the statute of limitations indefinitely. Fortunately, the law does not support such tortured logic. The second argument fails since Plaintiff never offers a single fact to support her cursory legal conclusion that with respect to her finances her husband acted in his capacity as a Vanguard employee. In reality, the only facts alleged on this issue demonstrate to the contrary – Plaintiff entrusted her husband with her financial affairs before he was even affiliated with Vanguard and for reasons unrelated to Vanguard. For these reasons, the Amended Complaint must be dismissed.

I. **ARGUMENT**

    A. **PLAINTIFF'S SECURITIES CLAIMS ARE TIME BARRED WHERE ACCOUNT STATEMENTS STARTING IN JANUARY 2004 PROVIDED INQUIRY NOTICE OF HER CLAIMS.**

Plaintiff essentially concedes that her claims are barred if she did not file this action within two years of when she knew or should have known of the alleged wrongdoing. See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss pgs. 4-5, 10. Plaintiff also concedes that in determining the commencement of the limitations period, the test is when "a reasonable investor of ordinary intelligence"…in the "exercise of reasonable diligence" should have known of the alleged wrongdoing. Id. at pg. 5 citing Gargiola v. DeMartino, 2007 US Dist. Lexis 71316 at *27 (E.D.Pa. September 26, 2007). Plaintiff acknowledges that this standard is an objective one. Id.

Having acknowledged the appropriate test and the objectivity of the test, Plaintiff proceeds to ignore it and, instead, focuses on her actual knowledge only.[1]  Plaintiff argues that she did not learn of any alleged wrongdoing until December, 2005 when she opened a monthly account statement.  Memorandum in Opposition, pg. 6.  As the Complaint starkly admits, Plaintiff was "shocked" when she saw in that statement that her account balance had fallen from $600,000 to less than $2,000 and knew something was amiss.  Amended Complaint ¶24.  Plaintiff's adoption of this time period (when she received actual notice), begs the question of when "a reasonable investor" exercising "reasonable diligence" should have been on notice  That question remains unanswered by Plaintiff.

Applying the proper **objective** standard of reasonable investor, there can be no doubt that the **actual** notice generated by the December 2005 statement would have been no different in the numerous statements generated years earlier when the account balance dropped precipitously.  Plaintiff does not seem to quarrel with the proposition that she should have reviewed her monthly account statements.  Indeed, the law on that point is clear.  See Mathews v. Kidder, Peabody & Co., Inc., 260 F.3d 239, 252 (3d. Cir. 2001)("[I]nvestors are presumed to have read prospectuses, quarterly reports, and other information related to investments."); Norniella v. Kidder Peabody & Co. Inc., 752 F. Supp. 624, 628 (S.D.N.Y. 1990) (holding that "duty of inquiry was triggered" by plaintiffs' receipt of account statements).  The case law reflects the presumption that a reasonable investor of ordinary intelligence would review their

---

[1] Anxious to avoid dismissal at this stage of the pleadings, Plaintiff argues that inquiry notice involves a question of fact which is inappropriate for resolution on a motion to dismiss.  Opposition Memorandum at pg. 5-7.  However, as even the cases cited by Plaintiff recognize, claims filed outside the statute of limitations should be dismissed on a Motion to Dismiss when the untimeliness is apparent on the face of the complaint.  Id. at pg. 6 citing Daimler-Chrysler Sec. Lit. 197, F. Supp. 42, 57 (D.Del. 2002).  See also In re Exxon Mobil Corp. Sec. Litig., 387 F.Supp.2d 407,419-20 (D.N.J. 2005), affirmed, 500 F.3d 189 (3d Cir. 2007)( Court dismissed claim as time-barred because it was apparent from the face of the Complaint that Plaintiffs were on inquiry notice); In re Dreyfus Aggressive Growth Mut. Fund. Litig., 2000 WL 10211, at *3 (S.D.N.Y. Jan. 6, 2000) (stating that inquiry notice can be determined as a matter of law).  The cases to the contrary cited by plaintiff involve facts outside the allegations of the complaint .  See Tracinda v. Daimlerchrysler 197 F.Supp.2d 42, 57 (D. Del. 2002) (financial articles cited by Defendant were not within the four corners of the Complaints); In re Lucent Technologies, 217 F.Supp.2d at 542 (determining that Plaintiffs had inquiry notice would require the court to draw conclusions beyond the face of the complaint).

monthly account statement and charges the investor with notice of what a reasonable person reviewing their statements would discern. To circumvent the detrimental effect that this obligation has on her claims, Plaintiff points to the husband-wife relationship in this case. Plaintiff argues that relationship alters her obligations and justifies her ignorance as to the content of the statements because her husband falsely assured her that her investments were performing well. Memorandum in Opposition, pg. 8.

Plaintiff cites as support for this theory the case of Komanoff v. Mahon. 884 F.Supp. 848 (S.D.N.Y. 1995), a case involving a claim of churning. Plaintiff's reliance on Komanoff is misplaced. The investor in Komanoff actually read her statements but claimed that they contained irregularities and errors. Id. at 854. The court also noted that the investor claimed her broker had affirmatively told her falsely that the information the investor saw on the account statements was not accurate. Id. at 852. The court focused on the special nature of excessive trading claims and the need for additional experience and knowledge to ascertain a pattern of churning. Id. at 854. In that context, the court suggested that placing extra trust in her broker because it was her daughter made Plaintiff's failure to discern the excessive trading activity more reasonable. Id.

The Komanoff court cited favorably the case of Appel v. Kidder, Peabody & Co., 628 F. Supp. 153 (S.D.N.Y. 1986), which held that an investor's claims were time barred since the investor's receipt of monthly account statements constituted inquiry notice. The Komanoff court recited that the investor in Appel could not take advantage of the fact that he didn't read his statements since he couldn't turn a blind eye to what was perfectly obvious. Ultimately, the court distinguished the investor in Komanoff from the investor in Appel since the Komanoff investor actually read her statements but they contained errors or irregularities. The Plaintiff in

the present case is far more similar to Appel than Komanoff. She admits that she simply did not read her statements. There is no allegation that the statements were incorrect in any way. No specialized knowledge was required by Plaintiff in this case to determine that there were unauthorized trades or that the trades didn't conform to her objectives. This point is demonstrated graphically by Plaintiff's own recitation in the Amended Complaint of her "shock" at opening the December, 2005 statement.

Plaintiff's effort to escape dismissal by blaming her husband's "false assurances" for her failure to learn what was undeniable in the monthly account statements is equally unavailing. Courts have appropriately held that these types of assurances do not toll the statue of limitations. See Goodman v. Shearson Lehman Bros., 698 F.Supp. 1078, 1082-83 (S.D.N.Y. 1988) (holding that the statute of limitations was not tolled where Plaintiff gave control of her accounts to her husband, even where husband misled her about the status of the accounts). To hold otherwise would permit an investor to delegate her responsibilities to others and thereby extend the statute of limitations indefinitely.

If Plaintiff's theory were to prevail, the running of the statute of limitations would be left purely in the subjective discretion of Plaintiff. At what point in her marriage would plaintiff "become concerned about her relationship with her husband", which she identifies as the precipitating event that led her to belatedly open a statement? See Amended Complaint at ¶24. After two years, five years, twenty years? Plaintiff could wholly avoid her own obligations as an investor until her marriage fails, an event obviously outside the control of Vanguard. Clearly that is not a proper legal standard and it is certainly not the one articulated in the cases cited by Vanguard. A **reasonable** investor is tasked with reviewing monthly statements and charged with knowledge of what is plainly evident in those statements. It is apparent from the face of this

Complaint that those statements were delivered to Plaintiff and vividly demonstrated what Plaintiff now claims to be unauthorized and unsuitable trades. With the most modest level of reasonable due diligence, Plaintiff would have been aware of her alleged claims when she opened her January 2004 account statement. Plaintiff's subjective decision to cede control to her husband does not change this analysis.

> **B.  PLAINTIFF'S COMPLAINT INSUFFICIENTLY ALLEGES THAT HER HUSBAND, DELANEY, ACTED WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN HE ALLEGEDLY MADE UNAUTHORIZED AND UNSUITABLE TRANSACTIONS.**

In its review of Section 10(b) and Rule 10b-5 claims, a court must ensure that the Complaint complied with the heightened pleading requirements of both the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b). Of particular importance is the requirement imposed by the PSLRA that a plaintiff must state with particularity all facts pled "upon information and belief." In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 147 (3d Cir. 2004) (quoting 15 U.S.C. § 78u-4(b)). Furthermore, although when determining whether to dismiss a Complaint for failure to state a claim a court must accept the facts of a Complaint as true (Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)), a court does not have to accept "a complaint's bald assertions or legal conclusions" (Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)) or unsubstantiated conclusions or factual inferences that are unwarranted. Saxton v. Cent. Pa. Teamsters Pension Fund, No. Civ. A. 02-CV-986 2003 WL 22952101, at *3 (E.D. Pa. Dec. 9, 2003).

The introduction to the Amended Complaint indicates that Plaintiff pled all matters not in respect to her own acts "upon information and belief." Therefore Plaintiff's allegation that "each of the unauthorized and unsuitable transactions was made by [her husband] during the course of and within the scope of his employment at Vanguard," Amended Complaint ¶ 19, is subject to

the heightened PSLRA pleading standard and must be pled with particularity.  As Defendants' initial Motion to Dismiss argued extensively, the Amended Complaint provides absolutely no facts to support Plaintiff's legal conclusion that her husband acted as Vanguard's employee during each of the unauthorized and unsuitable transactions.  See Memorandum in Opposition. at 23 (detailing the lack of factual support for Plaintiff's unfounded assertion that Delaney acted within the scope of his employment during the alleged unlawful transactions).  Given the complete absence of any information to support this allegation, not only should this Court dismiss the Amended Complaint because it completely fails to meet the PLSRA's heightened pleading requirement, it should dismiss the Amended Complaint because claiming that Delaney acted within the scope of his employment is a legal conclusion and not a fact that this Court must accept as true.

Plaintiff claims that Defendants are attempting to "skirt liability" by arguing that no facts in the Amended Complaint suggest that Delaney acted within the scope of his employment, and that in doing so Defendants ignored the "facts as pleaded."  Memorandum in Opposition. at 14.  However, Plaintiff fails to direct this Court to any facts in the Amended Complaint supporting the allegation that Delaney acted within the scope of his employment.  Plaintiff cannot do so because there are none.  Delaney had a dual role as both Plaintiff's husband and as a Vanguard employee.  Plaintiff delineates that with respect to her finances, her husband was acting in his marital role, not his role as a Vanguard employee.  Plaintiff claims that she permitted her husband to open an account with Vanguard based on his experience in the securities industry and the fact that he handled the family's finances.  Amended Complaint ¶ 9.  She admits that she authorized him to control her investments in order to prove himself to her father.  Amended Complaint ¶ 8.  She ceded control to her husband before he became a Vanguard employee.

Amended Complaint ¶ 13.  These are the only alleged facts related to whether Plaintiff's husband was acting in his marital role or as a Vanguard employee vis a vis Plaintiff's assets. The fact that Plaintiff continued to invest Plaintiff's assets after becoming a Vanguard employee doesn't render them acts performed "within the scope of employment".

Plaintiff further states in the Amended Complaint that:

> **At all relevant times**, [Plaintiff's husband] handled the family's finances, opened account statements and related correspondence, paid the family's bills and took care of the paperwork associated with their bills and accounts.  Since he handled the family's finances, [Plaintiff's husband] opened the account statements sent by Vanguard.  [Plaintiff] relied upon [her husband], defendants' agent and employee, to ensure that her investments at Vanguard continued to be suited to her investment objectives and to keep her informed about the status of her investments.

Amended Complaint ¶ 22 (emphasis added).   Again, the facts as set forth by the Plaintiff in the Amended Complaint suggest that her husband's dealings with the Vanguard account were not done in his role as an employee, but in his role as a husband.   Simply adding the qualifier "defendants' agent and employee" to the allegation does not qualify as factual support for the allegation that Plaintiff's husband was acting within the scope of his employment.  It is clear from this allegation that Plaintiff's husband handled the Vanguard account because he handled all of the family finances and not because he worked at Vanguard.  Since Plaintiff can provide no facts to support Plaintiff's conclusory allegation that Plaintiff's husband was acting within the scope of his employment at Vanguard, the Amended Complaint must be dismissed for failure to state a claim against Defendants.

## II. CONCLUSION

For all of the foregoing reasons, Defendants respectfully ask this Court to grant their motion to dismiss based on Plaintiff's failure to state a claim upon which relief can be granted.

                Respectfully submitted,

                "/s/" Paula D. Shaffner
                Paula D. Shaffner
                Attorney I.D. No. 43542
                Jennifer Minuchi
                Attorneys for Defendants
                SAUL EWING LLP
                Centre Square West
                1500 Market Street, 38th Floor
                Philadelphia, PA  19102-2186
                (215) 972-7777

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of Defendants' Response to Plaintiff's Memorandum Of Law Opposing Defendants' Motion To Dismiss was served this 14th day of December, 2007 via electronic filing and/or First Class Mail, addressed as follows:

>Jeffrey B. Gittleman, Esquire
>Barrack, Rodos & Bacine
>3300 Two Commerce Square
>2001 Market Street
>Philadelphia, PA  19103

                                              "/s/" Paula D. Shaffner

                                              Paula D. Shaffner