IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TRAVIS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-3484 |
| | : | |
| THE VANGUARD GROUP, INC., et al. | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                            **May 15, 2008**

      Plaintiff Joy Travis ("Plaintiff") brings this action against Defendants The Vanguard Group, Inc. and Vanguard Marketing Corporation ("Defendants" or "Vanguard"), alleging violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), breach of fiduciary duty, common law fraud, negligence, and conversion. Now before the Court is Defendants' Motion to Dismiss the Amended Complaint. For the reasons that follow, the Motion will be granted.

**I.     Background**

      The facts, as alleged in the Amended Complaint, are as follows. In 2003, Plaintiff received a cash distribution from an annuity trust established by her father. Amended Compl. ¶ 7. In October 2003, Plaintiff permitted her then-husband, John Delaney, to open an investment account for her at Vanguard, an investment management firm. Id. at ¶¶ 9-10. Delaney opened the account under Plaintiff's married name, Joy D. Delaney, and recommended that Plaintiff divide her initial investment of $600,000 among eleven Vanguard funds. Plaintiff followed the recommendation. Id. at ¶ 10. Delaney assured Plaintiff that her portfolio would satisfy her

1

conservative investment objectives. Id. at ¶ 12. After opening the account for Plaintiff, Delaney became employed by Vanguard as a registered representative. He remained in that position until early 2006. Id. at ¶ 13.

Beginning in January 2004, Delaney made over 450 unsuitable trades in Plaintiff's accounts without her knowledge or consent, depleting her assets. See id. at ¶¶ 15-18. At all times relevant to this action, Delaney handled the family's finances, opened account statements, and paid the family's bills. Plaintiff did not open any account statements from Vanguard, and relied on Delaney to ensure that her investments suited her financial objectives. See id. at ¶ 22. Delaney repeatedly reassured Plaintiff that her accounts were "doing well." Id. at ¶ 23. By December 2005, Plaintiff had become concerned about her relationship with Delaney. As a result, despite Delaney's assurances, Plaintiff opened her Vanguard account statement and was shocked to learn that her balance had fallen from $600,000 to less than $2,000. Id. at ¶ 24.

Plaintiff alleges that each of the unauthorized transactions was performed by Delaney during the course of and within the scope of his employment at Vanguard, and that Vanguard failed to supervise Delaney and monitor her accounts. See id. at ¶¶ 18-19. Defendants seek dismissal of the action, arguing, inter alia, that it was filed beyond the applicable statute of limitations.[1]

## II.   Legal Standard

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required "to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to

---

[1] Plaintiff commenced this action on August 22, 2007.

the non-moving party."  Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  In deciding a 12(b)(6) motion, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (citations omitted in original) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).

**III.   Discussion**

**1.      Federal Securities Claims**

Section 10(b) of the Securities Exchange Act provides that "[i]t shall be unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe...."  15 U.S.C. § 78j; In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 193 (3d Cir. 2007).  A claim for securities fraud under this section must be brought before the earlier of "(1) two years after the discovery of the facts constituting the violation, or (2) five years after such violation."  28 U.S.C. § 1658(b); Alaska Elec. Pension Fund v. Pharmacia Corp., 2007 WL 3231791, at *3 (D.N.J. Oct. 30, 2007).  The statute of limitations begins to run when a plaintiff "discovered or in the exercise of reasonable diligence should have discovered the basis for [his or her] claim against the defendant."  In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1325 (3d Cir. 2002); DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 216 (3d Cir. 2007).

The parties do not dispute that Plaintiff actually discovered the alleged fraud in late 2005 when she opened an account statement from Vanguard that revealed that her assets had declined drastically. See Amended Compl. at ¶ 24. The crux of Defendants' argument is that in the exercise of reasonable diligence, Plaintiff should have reviewed the monthly account statements Vanguard sent her, and therefore she was on notice of the alleged fraud in early 2004. The statements would have disclosed the following sharp decline:[2]

| **Statement Date** | **Balance** |
| --- | --- |
| January 31, 2004 | $626,007.82 |
| February 29, 2004 | $631,104.01 |
| March 31, 2004 | $557,442.11 |
| April 30, 2004 | $494,166.13 |
| May 31, 2004 | $474,576.82 |
| June 30, 2004 | $432,570.34 |
| July 31, 2004 | $360,536.14 |
| August 31, 2004 | $341,618.48 |
| September 30, 2004 | $274,681.38 |
| October 31, 2004 | $270,221.50 |
| November 30, 2004 | $261,479.95 |
| December 31, 2004 | $166,644.72 |

---

[2] The monthly statements are attached as Exhibit A to Defendants' Motion to Dismiss. The Court is permitted to consider the contents of the statements although they were not attached to Plaintiff's Complaint. See In re Burlington Coat Factory Sec. Lit., 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that documents integral to the complaint may be considered without converting the motion to dismiss into one for summary judgment); Pryor v. Nat'l Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court."); Pension Ben. Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

| | |
|---|---|
| January 31, 2005 | $77,181.76 |
| February 28, 2005 | $40,178.50 |
| March 31, 2005 | $35,770.45 |
| April 30, 2005 | $36,589.37 |
| May 31, 2005 | $16,590.83 |

In order to ascertain when Plaintiff was on notice, the Court must inquire whether she had sufficient information to trigger "storm warnings" of fraudulent activity. See Alaska Elec., 2007 WL 3231791, at *3 (citing In re NAHC, 306 F.3d at 1326 n. 5). The test for "storm warnings" is an objective one. Mathews v. Kidder, Peabody & Co., 260 F.3d 239, 252 (3d Cir. 2001). "Storm warnings may include any financial, legal or other data that would alert a reasonable person to the probability that misleading statements or significant omissions had been made." In re Merck & Co., Inc. Sec., Derivative & ERISA Litig., 483 F. Supp. 2d 407, 418 (D.N.J. 2007) (citations omitted); see also Dalicandro v. Legalgard, Inc., 2004 WL 250546, at *4 (E.D. Pa. Jan. 21, 2004); Hill v. Equitable Bank, Nat'l Ass'n, 599 F. Supp. 1062, 1075 (D. Del. 1984).

Plaintiff asserts that she is "unsophisticated in financial matters in general, and in the securities industry in particular" and "has no experience or knowledge with respect to investments." Amended Compl. at ¶ 6. Plaintiff's subjective knowledge or expertise, however, is irrelevant to this inquiry, and she "need not be aware of the suspicious circumstances or understand their import." Mathews, 260 F.3d at 252.[3]  Indeed, numerous courts have held that a

---

[3] Moreover, it is undisputed that meaningful review of the monthly account statements did not require specialized knowledge or expertise, as evidenced by the fact that when, in late 2005, Plaintiff opened and reviewed one of her account statements, she learned that her balance had diminished from $600,000 to less than $2,000. See Amended Compl. at ¶ 24.

reasonable investor is not free to ignore information contained in account statements, and therefore the knowledge that would be acquired through them is imputed to the investor. "It is enough that a reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning. *Thus, investors are presumed to have read prospectuses, quarterly reports, and other information relating to their investments.*" Id. (emphasis added); see also Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 401 (3d Cir. 2006) ("If [plaintiffs] have not shown such diligence, the knowledge they would have acquired through investigation is imputed to them."); Bishnu C. Borah, M.D., P.C. v. Monumental Life Ins. Co., 2007 WL 1030477, at *3 (E.D. Pa. Apr. 2, 2007); Norniella v. Kidder Peabody & Co., 752 F. Supp. 624, 628 (S.D.N.Y. 1990) (holding that the plaintiffs' duty of inquiry was triggered by the receipt of monthly account statements which would have revealed that the accounts were being handled inconsistently with their wishes); Rodriguez Canet v. Morgan Stanley & Co., 419 F. Supp. 2d 90, 95 (D.P.R. 2006) ("It is elementary that any reasonable investor would take steps to periodically ascertain the status of his/her account. Plaintiff cannot merely sit back and hope for the best; she had at a minimum, a duty to keep abreast of how her investments were performing ... [T]here were sufficient facts available in the monthly statements to alert a reasonable individual to a possible wrongdoing and trigger the corresponding duty to investigate.").

Plaintiff acknowledges that she received regular monthly statements from Vanguard, but relied on her husband to open and review them:

> At all relevant times, Delaney handled the family's finances, opened account statements and related correspondence, paid the family's bills and took care of the paperwork associated with their bills and

>   accounts. Since he handled the family's finances, Delaney and not
>   Travis opened the account statements sent by Vanguard.

See Amended Compl. at ¶ 22. Nowhere in the Amended Complaint does Plaintiff allege that she was prevented from accessing her account statements, or that the statements contained inaccurate or misleading information.

In Goodman v. Shearson Lehman Bros., 698 F. Supp. 1078, 1082 (S.D.N.Y. 1988), a factually analogous case, an investor brought an action against her former husband, whom she authorized to manage her brokerage accounts, and the brokerage firm where her accounts were maintained. The plaintiff alleged that instead of pursuing a conservative investment program, the defendants engaged in high-risk trades and speculative transactions which resulted in the depletion of her funds. Id. at 1081. As with the case at bar, the plaintiff received regular account statements, but failed to examine them. She alleged that she had no reason to be suspicious because her former husband repeatedly assured her that her accounts were being successfully managed. Id. at 1083.

The Goodman Court rejected the argument, observing that had the plaintiff "been exercising reasonable diligence in monitoring her accounts, there can be little doubt that [she] would have discovered the fraud." Id. at 1082. The Court held that the plaintiff's contention that she was repeatedly reassured that her investments were in order "will not toll the commencement of the limitations period." Id. at 1083. Concluding that the plaintiff failed to act with reasonable diligence in failing to review her account statements, the Court dismissed the securities fraud as time-barred. Id.

In Appel v. Kidder, Peabody & Co., 628 F. Supp. 153 (S.D.N.Y. 1986), the Court

dismissed as time-barred a securities fraud claim, finding that throughout the period in which the plaintiffs alleged that they were being defrauded by their broker, they were "receiving monthly statements and daily confirmation slips which accurately reflected the trading activity in the account." 628 F. Supp. at 157.  The Court rejected plaintiffs' argument that they did not have the opportunity to review the statements on a monthly basis, noting that "Plaintiffs may not close their eyes and say they do not see what is perfectly obvious." Id. at 157-58.  Concluding that reasonable diligence would have revealed the alleged fraudulent activity long before the plaintiffs' actual discovery, the Court dismissed the securities fraud claim as untimely.  Id.

Plaintiff contends that the issue of when she was placed on notice of the fraud is a question of fact to be determined by a fact finder.  The Court disagrees.  "When the facts from which knowledge may be imputed are clear from the pleadings and the public disclosures, the question of inquiry notice may properly be resolved on a motion to dismiss." Brimo v. Corporate Express, Inc., 2000 WL 1506083, at *2 (2d Cir. Oct. 6, 2000); DeBenedictis, 492 F.3d at 219; Benak, 435 F.3d at 400 ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6)...."); Brumbaugh v. Princeton Partners, 985 F.2d 157, 162 (4th Cir. 1993) ("Where the underlying facts are undisputed, the issue of whether the plaintiff has been put on inquiry notice can be decided as a matter of law."); Jacobsen v. Oliver, 201 F. Supp. 2d 93, 109-110 (D.D.C. 2002) ("The test for inquiry notice is an objective one and dismissal on a motion to dismiss is appropriate when the facts from which knowledge may be imputed are clear from the pleadings and the public disclosures themselves.").

In the absence of any allegation that Plaintiff was prevented from accessing or reviewing her account statements, or that the statements contained inaccurate or incomplete information, Plaintiff was on inquiry notice of the alleged fraudulent activity in early 2004.  The statute of limitations thus began to run in early 2004, and expired in early 2006, approximately a year and a half before she commenced this action.  Had Plaintiff exercised reasonable diligence and reviewed her account statements, she would have learned far sooner that her account was not being managed in a manner consistent with her conservative financial goals.  Her misplaced reliance on her husband's assurances, when directly contradicted by account statements available to her, cannot serve to toll the statute of limitations.  See Goodman, 698 F. Supp. at 1083.  Accordingly, Plaintiff's securities fraud claims are time-barred and will be dismissed.

**2.     State Law Claims**

Having disposed of all federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims.  See 28 U.S.C. § 1367(c)(3); see also Bright v. Westmoreland County, 380 F.3d 729, 751 (3d Cir. 2004) ("[A]bsent extraordinary circumstances, where the federal causes of action are dismissed, the district court should ordinarily refrain from exercising pendent jurisdiction over the state law claims."); Berkowitz v. Conrail, Inc., 1997 WL 611606, at *17 (E.D. Pa. Sept. 25, 1997).

**IV.    Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss will be granted.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOY TRAVIS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-3484 |
| | : | |
| | : | |
| THE VANGUARD GROUP, INC., et al. | : | |

**ORDER**

**AND NOW**, this 15th day of May, 2008, upon consideration of Defendants' Motion to Dismiss (docket no. 9), and all responses thereto, and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED**, and the Clerk of the Court shall mark this case **CLOSED**.

BY THE COURT:


/s/ Bruce W. Kauffman
BRUCE W. KAUFFMAN, J.

10